Argued and submitted June 19, affirmed November 2, 1981

BARTLETT,
*Appellant,*
*v.*
MacRAE,
*Respondent.*

(No. L11,300, CA 17868)

635 P2d 666

Mark R. Bocci, Portland, argued the cause for appellant. With him on the brief was Pippen & Bocci, Portland.

Gary V. Abbott, Portland, argued the cause for respondent. With him on the brief was Lang, Klein, Wolf, Smith, Griffith & Hallmark, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

In this action for wrongful death, plaintiff sought recovery on three theories: (1) strict liability; (2) negligence *per se* under the Oregon Hazardous Substances Act, ORS 453.035 and ORS 453.085; and (3) negligence. The trial court granted defendant's motion for a directed verdict on the strict liability and negligence *per se* counts. On the simple negligence count the jury found defendant 30% and decedent 70% negligent. Plaintiff appeals. We affirm.

Plaintiff's husband died as a result of accidentally drinking poisonous dye used to mark cattle. The dye was prepared by defendant, a veterinarian, who had dispensed it to the decedent's employer, K & F Cattle Company, in a white plastic gallon jug that carried a label stating its contents were intended for oral use only by animals. Decedent drank from the jug, having mistaken it for his water bottle, which was also a white plastic gallon jug.

■    In reviewing the directed verdicts, we consider the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiff. *Allen v. The Heil Company,* 285 Or 109, 112, 589 P2d 1120 (1979).

Plaintiff's first assignment of error is the trial court's order granting defendant's motion for a directed verdict on the strict liability count. She contends the product was defective because of an unreasonably dangerous design defect in the dye container, *i.e.,* its label failed to warn users of the toxicity of the container's contents.

■■    Plaintiff was required to prove any defect in the product was the proximate cause of the injury. *Harris v. Northwest Natural Gas Company,* 284 Or 571, 576, 588 P2d 18 (1978); *O'Lander v. Int. Harvester Co.,* 260 Or 383, 390, 490 P2d 1002 (1971); *Heaton v. Ford Motor Co,* 248 Or 467, 470, 435 P2d 806 (1967). The evidence shows that while relieving himself and looking across the country, decedent seized the plastic jug and drank from it without looking at it. Decedent stated later he was disgusted with himself and could not understand why he had drunk from the dye container. The dye was a dark color, visible through its white plastic container. The label was large and clearly

marked.[1] There was no substantial evidence that any alleged labeling deficiencies were the proximate cause of the injury.

■        Plaintiff contends that decedent would not have drunk from the dye container if it had been secured with a "child-proof" or safety cap. Assuming *arguendo* that "child-proof" or safety caps have some relevancy to adults, this contention fails because the safety cap issue was not pled, and therefore it is not relevant or material. *See Prouty L. & B. Co. v. J.H. Cogan, et al,* 101 Or 382, 387, 200 P 905 (1921). The trial judge did not err in granting defendant's motion for a directed verdict on the strict liability count.

Plaintiff next assigns as error the trial court's granting of defendant's motion for a directed verdict on the issue of negligence *per se.* Plaintiff contends the Oregon Hazardous Substance Act, ORS 453.005 *et seq.,* applies in this case.[2] ORS 453.085 (the only section of the act on which plaintiff could rely) provides in part:

"It shall be unlawful for any person to perform any of the following acts:

"(1)   The introduction or delivery for introduction into commerce of any misbranded hazardous substance or banned hazardous substance.

"* * * * *

"(4)   The receipt of or delivery into commerce of any misbranded hazardous substance or banned hazardous substance for pay or otherwise.

"* * * * *

"(7)   The introduction or delivery for introduction into commerce, or the receipt in commerce and subsequent delivery or proffered delivery for pay or otherwise, of a hazardous substance in a reused food, drug or cosmetic container or in a container which, though not a reused

---

[1] The container's large label provided, in part: "1 GALLON . . . . Omnizole (Thiabendazol) . . . Suspension . . . CAUTION: Federal law restricts this drug to use by or on the order of a licensed veterinarian . . . . For Oral Use in Animals Only . . . VETERINARY . . . . Professional Veterinary Products . . . MERCK CHEMICAL DIVISION . . ."

[2] Defendant argues the Oregon Hazardous Substance Act has been preempted by the Federal Hazardous Substance Act, 15 USC § 1261 *et seq.* Because we find the Oregon act is not applicable here, it is unnecessary to decide whether it is pre-empted by the federal act.

container, is identifiable as a food, drug or cosmetic container by its labeling or by other identification.

"* * * * *."

The word "commerce," which is used in all three quoted subsections of ORS 453.085, is defined in ORS 453.005(2):

" 'Commerce' means any and all commerce within the State of Oregon and subject to the jurisdiction thereof and includes the operation of any business or service establishment."

■ Defendant is a veterinarian licensed to practice in Washington, whose only office is located in Ellensburg, Washington. The dye was provided to decedent's employer in Washington. Plaintiff offered no evidence that defendant distributed the dye in Oregon, operated any business or service establishment in Oregon, or did anything in Oregon. Therefore, the trial court did not err in granting defendant's motion for a directed verdict on the issue of negligence *per se.*

■ Plaintiff's third assignment is that the trial court should not have excluded testimony from decedent's physician that he was told of a telephone conversation between one of the emergency room staff at the hospital where decedent was treated and "the veterinarian's office." During this conversation the emergency room staff member was allegedly advised the dye contained gum arabic, water and peroxide (all of which are non-toxic) but was not informed the dye contained a fourth ingredient, Nyanzol-D, later discovered to be poisonous.

This evidence was hearsay. Plaintiff offered no proof that a call was made to defendant's office or that any person in that office was defendant or defendant's agent acting within the scope of his agency and authorized to make a statement. *See Timber Access Ind. v. U.S. Plywood,* 263 Or 509, 517, 503 P2d 482 (1972). Furthermore, the evidence was irrelevant, because plaintiff did not allege defendant concealed or misrepresented the ingredients of the dye. *See Prouty L. & B. Co. v. J.H. Cogan et al, supra.*

■ Plaintiff next contends that the court erred in instructing the jury on defendant's duty of care. The jury was instructed defendant was bound by the standard exercised "by other veterinarians in the community". Plaintiff

maintains the standard should have been that of a reasonable and prudent person, because dispensing cattle dye is not within the scope of a veterinarian's professional services. We do not agree that this was not a professional activity.

■ ■ Plaintiff also contends the trial court erred in instructing the jury that decedent had a duty to maintain a reasonable lookout for his own safety.[3] A person has an obligation to use ordinary care for his own protection. In *Bowlds v. Taggesell Pontiac,* 245 Or 86, 95, 419 P2d 414 (1966), the court held that an instruction substantially similar to the instruction given here accurately stated the applicable law. The instruction was not error.

Affirmed.

---

[3] The instruction given was:

"It is the continuing duty of all people to keep and maintain a reasonable lookout for their own safety.

"A reasonable lookout means such as would be maintained by a reasonably prudent person under the same or similar circumstances.

"In determining this question, you should take into consideration the extent or degree of danger reasonably to be expected. A person does not comply with the duty to keep a reasonable lookout by simply looking and not seeing that which is plainly visible and which would have been seen by a reasonably prudent person under the same or similar circumstances."