Argued and submitted January 25, reversed and remanded May 4, 2011

Teresa VANDEVEERE-PRATT,
*Plaintiff-Appellant,*

*v.*

PORTLAND HABILITATION CENTER, INC.,
an Oregon nonprofit corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
080506953; A142843

259 P3d 9

Maureen Leonard argued the cause for appellant. With her on the briefs was Jon Zbinden.

Todd S. Baran argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Plaintiff appeals a judgment for defendant in this slip and fall case, assigning error to the trial court's failure to give one instruction to the jury and its decision to give another. We hold that the trial court erred in failing to give the first instruction and that the second instruction was potentially misleading; we therefore reverse the trial court's judgment.

We state the facts in the light most favorable to the giving of the challenged instructions. *See Hernandez v. Barbo Machinery Co.*, 327 Or 99, 101 n 1, 957 P2d 147 (1998). Defendant has a contract to provide janitorial services for the Portland International Airport. Early on the morning of August 12, 2007, Hurtell, defendant's employee, was working on Concourse C of the airport. Most of the concourse is carpeted, but a segment that passes through a food court is made of terrazzo, a surface that consists of marble and granite chips ground to a smooth surface and then sealed. As part of his work, Hurtell mopped that area shortly before 2:00 a.m. He placed warning markers at each end of the terrazzo area.

Plaintiff and her assistant returned from a business trip on a delayed plane that arrived at Concourse C at about the time that Hurtell was mopping the terrazzo area. After leaving the plane, they walked down the concourse at a normal pace, heading to the baggage claim area. Possibly because other passengers from the plane were walking down the concourse at the same time, neither of them saw either Hurtell or the warning markers that he had placed. While they were walking through the terrazzo area, plaintiff slipped on the surface and fell, breaking her ankle. As a result of the injury, plaintiff has permanent loss of function in her ankle and suffered substantial economic and noneconomic damages.

There is evidence from which a jury could find that the terrazzo surface was very wet and slippery at the time of plaintiff's fall. Plaintiff's clothes became soaked and her hair became wet as she lay on the floor waiting for help. Although the floor normally dries within 10 to 15 minutes after a mopping, over half an hour after the fall, Hurtell's supervisor

wiped up standing water from an area two or three feet from where plaintiff fell. Plaintiff's expert testified that a wet terrazzo floor is almost as slippery as an ice surface. He stated that the standard of care for mopping a terrazzo floor is to block off one side of the terrazzo area, mop that area, and, after the blocked-off area has dried, block off the other side and mop it. Defendant follows that procedure when it strips and waxes the surface but not when it mops it. Defendant's supervisor also testified that, if she had known that a delayed plane was coming in, she would probably have waited to have Hurtell mop the area.

The parties tried the case as one involving potential premises liability. Plaintiff alleged that defendant had a duty "to protect plaintiff from hazardous conditions" and "to remove hazardous conditions" on the premises but was negligent in, among other things, "[f]ailing to correct a dangerous condition of water on the floor in the area of Concourse C by the Wendy's Restaurant such that [it] became an unreasonably dangerous slip hazard." Based on those allegations and on the evidence, plaintiff asked the court to give Uniform Civil Jury Instruction 46.09, which states:

> "It is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise reasonable care to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise reasonable care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid harm.

> "If you find that the condition that existed could not be encountered with reasonable safety even if the danger was known and appreciated by the invitee, the possessor is obligated to do more than warn; the possessor must take reasonable and feasible steps to eliminate the danger."

The trial court gave the first paragraph of the instruction but refused to give the second paragraph. In her first assignment of error, plaintiff challenges that refusal.

We apply several legal standards in our review of claimed instructional error. As a general rule, "parties in a civil action are entitled to jury instructions on their theory of

the case if their requested instructions correctly state the law, are based on the current pleadings in the case, and are supported by evidence." *Hernandez*, 327 Or at 106. The requested instruction need not be given unless it pertains "to a material issue in the case on which the court otherwise has not instructed the jury fully." *Id.* And, even if the failure to give a correct instruction is erroneous, an appellate court will not reverse unless the error "substantially affected" a party's rights. ORS 19.415(2); *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 174, 61 P3d 928 (2003) (brackets omitted). "[W]hen a trial court incorrectly instructs the jury on an element of a claim or defense and when that incorrect instruction permits the jury to reach a legally erroneous result, a party has established that the instructional error substantially affected its rights." *Wallach v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008).

■ By giving the jury the first paragraph of Uniform Civil Jury Instruction 46.09, the trial court told it that defendant could satisfy its duty to make the terrazzo area reasonably safe for plaintiff either by warning of the dangerous condition or by eliminating it. Based on that paragraph alone, the jury would have understood that, because a warning would be sufficient, defendant did not have to correct the condition. The second paragraph would have modified that rule by telling the jury in addition that, if plaintiff could not encounter the condition with reasonable safety even if plaintiff knew and appreciated its dangerousness—that is, if the condition was unreasonably dangerous—a warning would not be sufficient. In that case, defendant would have had to take reasonable and feasible steps to eliminate the danger.

The legal support for the second paragraph of the proposed instruction is found in two Supreme Court decisions. *Wilk v. Georges*, 267 Or 19, 514 P2d 877 (1973); *Dawson v. Payless for Drugs*, 248 Or 334, 341, 433 P2d 1019 (1967) (plaintiff's knowledge of ice in defendant's parking lot did not prevent jury from finding defendant negligent, when jury could find ice made the lot unreasonably dangerous and it was feasible for defendant to remove it). In *Wilk*, the plaintiff did not see posted warning signs and slipped on wet planks that the defendant had placed around its garden supply business. 267 Or at 21. On appeal, the Supreme Court

held that the trial court erred when it instructed the jury that a warning satisfied the defendant's obligation to the plaintiff. *Id.* at 26. Relying on *Dawson,* the court held that the trial court should have instructed the jury that if it found

> "that the condition that existed was unreasonably dangerous —a condition which cannot be encountered with reasonable safety even if the danger is known and appreciated—the owner of the premises is obligated to do more than post warning signs; [the owner] must take reasonable and feasible steps to obviate the danger."

*Wilk,* 267 Or at 26. Because there was evidence to support a finding that the condition was unreasonably dangerous, it reversed the judgment for the defendant. *Id.* at 27.

The second paragraph of the instruction correctly states the law as the Supreme Court described it in *Wilk.* Defendant does not seem to argue otherwise. Rather, defendant argues that the second paragraph is immaterial to an issue in the case. It asserts that *Wilk* applies only to a possessor's failure to ameliorate a hazardous condition of land, not to its engaging in an activity that creates a hazardous condition. According to defendant, a claim that a possessor of land engaged in an activity that created a hazardous condition is governed by the reasonable forseeability standard of *Fazzolari v. Portland School District No. 1J,* 303 Or 1, 734 P2d 1326 (1987), not by the rules related to premises liability.

We reject defendant's argument that the second paragraph of the instruction is immaterial for two reasons. First, defendant's contention that the trial should not have included a premises liability claim at all constitutes a significant shift in legal theory on appeal. The case was tried and submitted to the jury as a premises liability case without defendant's objection. Second, we are unaware of any legal basis for the distinction defendant asserts, and the cases that defendant cites do not support it. In *Dodge v. Darritt Construction, Inc.,* 146 Or App 612, 934 P2d 591 (1997), *rev den,* 326 Or 530 (1998), a general contractor negligently let rainwater seep into the hospital in which the plaintiff worked, and the plaintiff was injured while cleaning it up. There was no claim that the defendant was liable on a premises liability theory, so that case fails to support the

distinction defendant urges. In *Mounts v. Knodel*, 83 Or App 90, 730 P2d 594 (1986), the plaintiff was injured when the strap holding the saddle on the horse that he was riding broke. We held that the defendant was not entitled to an instruction distinguishing between the duties owed to a licensee and those owed to an invitee in premises liability cases based on conditions of the land. *Id.* at 94. In neither case did the parties assert or the court address whether a premises liability claim could arise out of an activity on the land.

Here, defendant's activity of mopping the floor created a condition in the concourse that led to plaintiff's injury. The legal rules concerning defendant's liability for that injury apply, even if its activity created the condition on the premises that led to plaintiff's injury. *See Ragnone v. Portland School Dist. No. 1J*, 291 Or 617, 621-22, 633 P2d 1287 (1981) (describing duties of an occupier of land as to both conditions of and activities on the land); *Bryant v. Sherm's Thunderbird Mkt.*, 268 Or 591, 602-03, 522 P2d 1383 (1974) (holding that as one who does an act or carries on an activity upon land on behalf of the possessor, refrigeration supply company could be liable for physical injury caused to others on premises as though it were a possessor of land when its employees allegedly removed plywood covering trench inside market, and plaintiff tripped over exposed cables).

■ Defendant next argues that the evidence did not support giving the second paragraph of the instruction and that the evidence established that any error was harmless. Among other things, defendant points out that other passengers from the plane walked through the terrazzo area without falling, something that the Supreme Court has said is relevant to whether a defendant knew or should have known that the condition was unreasonably dangerous. *See Wilks*, 267 Or at 27. Defendant's argument on this and other points might well persuade a jury, but it is largely irrelevant to the legal questions on appeal. Despite defendant's arguments to the contrary, plaintiff adduced sufficient evidence from which a jury could find that the wet floor was unreasonably hazardous. *See Crismon v. Parks*, 238 Or App 312, 314, 241

P3d 1200 (2010) (instruction may be supported by any competent evidence). Among other things, there is evidence that a wet terrazzo floor is almost as slippery as ice, that this floor was especially wet, that defendant knew that wet floors are a slipping hazard, that the standard of care for mopping a terrazzo floor is to barricade the area to be mopped, and that defendant in fact barricaded the floor when it waxed it. From those facts, a jury could find that defendant created an unreasonably dangerous condition, it was feasible to correct that condition, and warning devices were not sufficient to protect those who used the wet terrazzo floor.

By giving only the first paragraph of the instruction, the trial court permitted the jury to find for defendant based on its having provided a warning, without considering plaintiff's theory that defendant was required to do more to prevent injury because the floor's condition was unreasonably dangerous. The failure to give the requested second paragraph of Uniform Civil Jury Instruction 46.09 was erroneous, and the error substantially affected plaintiff's rights by allowing the jury to find in defendant's favor based solely on the fact that a warning was given. Indeed, questions from the jury during deliberations indicated that some jurors believed that the warning given was inadequate.

Plaintiff's second assignment of error challenges the giving of defendant's requested instruction on her duty to maintain a reasonable lookout. The court instructed the jury:

"It is the continuing duty of a person to keep and maintain a reasonable lookout for their [sic] own safety. A reasonable lookout means such as would be maintained by a reasonably prudent person under the same or similar circumstances.

"In determining this question, you should take into consideration the extent or degree of danger reasonably to be expected. A person does not comply with the duty to keep a reasonable lookout by simply looking and not seeing that which is plainly visible and would have been seen by a reasonably prudent person under the same or similar circumstances."

The court placed this instruction near the end of its instructions concerning damages rather than with the other instructions the court gave concerning negligence or comparative negligence, including Uniform Civil Jury Instruction 46.10 concerning comparative negligence of an invitee. Plaintiff argues that the challenged instruction is an improper statement of the law because it raised the doctrine of implied assumption of the risk, which the legislature abolished in 1975. *Former* ORS 18.475(2) (1975), *renumbered as* ORS 31.620(2) (2003). Defendant responds that we approved an essentially identical instruction in *Bartlett v. MacRae*, 54 Or App 516, 520-21, 635 P2d 666 (1981), which we decided after the legislature's action, and that any error was harmless. We begin by reviewing two 1981 Supreme Court decisions concerning the combined effects of the abolition of implied assumption of the risk and the adoption of comparative fault to replace contributory negligence.

In *Blair v. Mt. Hood Meadows Development Corp.*, 291 Or 293, 630 P2d 293, *modified*, 291 Or 703, 634 P2d 241 (1981), the Supreme Court discussed the effect of the abolition of assumption of the risk on claims by persons who participate in sports. The plaintiff in *Blair* was injured while skiing at the defendant's ski area. The trial court instructed the jury that every person who takes part in a sport accepts the dangers that are inherent in or a reasonable part of that sport and submits to those inherent dangers. *Id.* at 296. The jury found that the defendant was not negligent, and the plaintiff assigned that instruction as error on appeal.[1] *Id.* The Supreme Court held first that the statute abolishing assumption of the risk applied both to assertions that the plaintiff was negligent by encountering the risk and to assertions that the defendant was excused from liability for risks that would be its fault as to persons not in the plaintiff's position. *Id.* at 297-98. The Supreme Court held that "the legislature intended to abolish all use of the concept of plaintiff's assumption of risk in negligence cases." *Id.* at 300. Thus, a plaintiff's actions are no longer relevant to the defendant's duty of due care. The plaintiff's conduct in voluntarily and unreasonably encountering a risk for which the defendant

---

[1] The *Blair* injury and trial both occurred before the effective date of ORS 30.970 to 30.990, which deal specifically with a skier's assumption of the risk of skiing.

may bear responsibility is now relevant only as a kind of negligence that the jury would compare to the defendant's negligent conduct under the rules of comparative fault. *Id.* at 300-02. Because the instruction in *Blair* focused on the plaintiff's assumption of the risk rather than the defendant's duty, the trial court should not have given it.[2]

In *Nylander v. State of Oregon*, 292 Or 254, 637 P2d 1286 (1981), the issue was the state's duty to warn of icy conditions on a highway bridge. The trial court instructed the jury that the state had no obligation to warn if the driver knew or reasonably should have known of the nature and extent of the danger from the icy condition. *Id.* at 256. The problem with that instruction, the Supreme Court held, was that the state's duty to warn was predicated on the driver's knowledge rather than on the conditions that existed at the time and the risks that they posed for all potential drivers. *Id.* at 257-59. A driver's failure to act reasonably under the circumstances is relevant only to the driver's comparative fault, an issue that a jury would not consider unless it first decided that the state had failed in its duty to warn. *Id.* at 260. The court thereby affirmed the application of the rule in *Blair* to all situations in which the plaintiff faces risks that could be the defendant's responsibility.

In *Mounts*, we applied *Blair* and *Nylander* and held that a proposed instruction that focused on the plaintiff's risk rather than the defendant's duty was improper. 83 Or App at 96. The instruction would have told the jury, among other things, that "a licensee must keep a proper lookout and not unreasonably expose himself to hazards or otherwise fail to recognize the risk of harm which would be known to a reasonably prudent licensee." *Id.* at 95-96. Plaintiff argues that *Bartlett* cannot be reconciled with *Mounts* and that our approval in *Bartlett* of an instruction that is essentially identical to the instruction that plaintiff challenges in this case has been superseded by the analysis in *Mounts*, *Blair*, and *Nylander*.

We find the situation more complicated than plaintiff suggests. As we indicated in *Bartlett*, an injured plaintiff

---

[2] After reaching this conclusion, the court decided that the plaintiff's exception to the instruction did not properly preserve the issue; it therefore affirmed the judgment for the defendant.

may well be negligent by failing to keep a reasonable lookout for the plaintiff's own safety, and a jury may compare that negligence to the defendant's in reaching its verdict. 54 Or App at 521; *see also Audas v. Montgomery Ward, Inc.*, 79 Or App 718, 721, 719 P2d 1334 (1986) (trial court should have instructed jury on defendant's theory that plaintiff failed to maintain a proper lookout and control over bodily movements, but error was harmless given instructions as a whole, including instruction on comparative negligence, and special verdict requiring jury to answer whether plaintiff was negligent). If placed in the context of defendant's comparative fault defense, the first paragraph of defendant's lookout instruction would make that point; it does not indicate that plaintiff assumes any risks of the activity, but only that a plaintiff should act with normal concern for self-preservation.

■ Under *Blair* and *Nylander*, though, it is essential that the jury understand that it should consider the plaintiff's duty only as part of comparing the plaintiff's negligence to the defendant's, which the jury can do only after first finding that the defendant was negligent. Otherwise, the instruction has the potential to suggest, improperly, that the plaintiff's failure to maintain a proper lookout excuses the defendant from any liability because the plaintiff assumed the risk of injury. In this case, the lookout instruction suffers from that flaw.

For at least two reasons, we think that the jury could have understood the lookout instruction as excusing defendant's breach of its duty rather than as explaining defendant's allegations that plaintiff was herself negligent. First, the trial court separated the instruction from the other instructions on negligence and comparative fault. The trial court had already instructed the jury, using Uniform Civil Jury Instruction 46.10, regarding an invitee's duty of care and how to compare the negligence of the parties:

> "The invitee is required to exercise reasonable care to avoid harm from a condition on the premises of which the invitee knows or, in the exercise of reasonable care, should know.

> "In determining and comparing negligence, if any, you must consider the obviousness of danger and the ease or difficulty with which harm to the plaintiff from that danger could be avoided by either party."

Thus, the lookout instruction, which did not contain any reference to comparative negligence and emphasized the plaintiff's duty in both paragraphs, was likely confusing. The jury could have believed that the instruction as a whole related to plaintiff's right to a recovery rather than to an examination of plaintiff's comparative fault.

In addition, the second paragraph of the lookout instruction—focused as it was on plaintiff's conduct—suggested that, because plaintiff did not see the warning markers, plaintiff was fully at fault for her injury and could not prevail. This at least implies that, by proceeding into the concourse, plaintiff assumed the risk of whatever hazards existed there, and that the jury could use her alleged failure to maintain a proper lookout to find defendant had no duty towards her. Both *Blair* and *Nylander* make clear that such a suggestion is improper and prejudicial.

Although we conclude that the challenged lookout instruction was erroneous in this case, we decline plaintiff's invitation to disavow our decision in *Bartlett* approving a substantially similar instruction. When we review jury instructions, our primary concern is whether the instruction provided a correct statement of the applicable law and whether any error substantially affected the rights of a party by permitting the jury to reach an incorrect result. *Wallach*, 344 Or at 322. That determination is affected by the contentions of the parties at trial and the other instructions that are given. *Waterway Terminals v. P.S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970). In *Bartlett*, the decedent, a ranch hand, drank poisonous cattle dye from a white plastic jug, thinking that it was his water jug. 54 Or App 518-19. The darkly colored dye showed through the container, and the defendant veterinarian had placed a "large and clearly marked" label on the jug before providing it to the decedent's employer. *Id.* The plaintiff's negligence theory was that the defendant's conduct did not meet the standard of care of other veterinarians in the community, and the defendant was found 30% negligent. *Id.*

It is not apparent that the plaintiff challenged the instruction on the ground that it suggested the decedent assumed the risk of the defendant's negligence, either in the trial court or on appeal, and *Bartlett* did not consider the effect of the repeal of implied assumption of the risk, the issue plaintiff in this case raises.

■ In this case, after the trial court had already instructed the jury on each party's duties and comparative negligence, the lookout instruction emphasized and directed the jury's focus toward plaintiff's action in encountering the risk. As the Supreme Court recently noted, "[f]or appellate courts reviewing claims of instructional error, the touchstones are legal accuracy and clarity." *Estate of Michelle Schwarz v. Philip Morris Inc.*, 348 Or 442, 454, 235 P3d 668, *adh'd to on recons*, 349 Or 521, 246 P3d 479 (2010). We conclude the instruction created an erroneous impression of the law that, combined with the lack of instruction on defendant's potential liability even if it had warned of the risk, permitted the jury to reach a legally erroneous result.

Reversed and remanded.