This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **No. 34,148**

**ZACHARY GREEN,**

Defendant-Appellant.

**INTERLOCUTORY APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**James Lawrence Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Adrian & Associates PC
Penni Adrian
Los Lunas, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

{1}     Defendant Zachary Green was charged with: two counts of armed robbery with firearm enhancement, contrary to NMSA 1978, Sections 30-16-2 (1973) and 31-18-16 (1993); one count of escape or attempt to escape from a peace officer, contrary to NMSA 1978, Section 30-22-10 (1963); one count of possession of a firearm or destructive device by a felon, contrary to NMSA 1978, Section 30-7-16 (2001); one count of distribution of a controlled substance, contrary to NMSA 1978, Section 30-31-22(A)(2) (2011); and one count of conspiracy to commit distribution of a controlled substance, contrary to NMSA 1978, Sections 30-28-2 (1979) and 30-31-22(A)(2). Defendant was never convicted of these crimes because he applied for and was granted an interlocutory appeal to assess whether his right to a speedy trial was violated due to the lengthy pretrial delay. On appeal, Defendant argues that the 23-month delay in his case violated his right to a speedy trial and that due to the violation, the charges should be dismissed. We agree and thus reverse the district court's order denying Defendant's motion to dismiss for lack of a speedy trial and remand to the district court for entry of an order dismissing the charges.

**BACKGROUND**

{2}     Defendant was arrested on September 11, 2012. On October 10, 2012, defense counsel filed an entry of appearance, request for discovery, and a speedy trial demand in magistrate court. Defendant's case was transferred out of magistrate court, and a

criminal information was filed in district court on October 15, 2012. On November 19, 2012, Defendant was arraigned, pleaded not guilty, and trial was set for May 13, 2013. At his arraignment, the State explained that the magistrate court had "actually made this a no bond" case and requested that the district court set a $100,000 cash-only bond. The district court complied with the State's request. On December 5, 2012, Defendant exercised a peremptory excusal of the district court judge, and the case was reassigned to a second judge that same day. The excusal and reassignment apparently resulted in the May 2013 trial setting being vacated. After the reassignment, neither the parties nor the court took any action on the case for over seven months.

{3} On December 11, 2013, 15 months after he was arrested, Defendant filed a motion to dimiss for lack of a speedy trial. Five days later, Defendant, who had been incarcerated since his arrest, filed a motion to reconsider the conditions of release and for a bond reduction. Defendant's case apparently had been re-set for trial on a January 2014 trailing docket of over 130 cases, of which Defendant's case was number 81. Defendant's case was not called for trial. The State responded to Defendant's motion to dismiss for lack of a speedy trial on March 3, 2014, almost three months after Defendant's motion was filed. The following day, the district court held a hearing to consider Defendant's motion to dismiss and motion to reconsider the conditions of release. After hearing the parties' arguments, the court stated, "The

3

motion will be denied. It will be on the next docket." As to the bond reduction, the court reduced the bond amount to $50,000 cash or surety, and later that month, the court entered an order amending the conditions of release and bond to reflect the bond reduction. Defendant posted bond the following day.

{4}     Defendant filed a second motion to dismiss for lack of a speedy trial in April 2014. Later that month, the case was reassigned to a third judge, following the second judge's retirement. Hereinafter, we refer to this third assigned judge as "the court." The State responded to Defendant's second motion to dismiss in May 2014. Also in May 2014, Defendant filed his third motion to dismiss for a speedy trial violation, a memorandum in support of that motion, and a declaration of prejudice. In June 2014, the court held a hearing on Defendant's motion for speedy trial. At the hearing, the court noted that it had not seen what the previous judge had said on the motion, but was able to confirm that the previous judge had denied the motion just 50 days prior. The court indicated that it was willing to give Defendant a setting that month or in July, but it was not willing to "second guess" what the prior judge had done. Defense counsel argued that the court, in making its ruling, ought to weigh "some factors," including prejudice to Defendant. Defendant explained that he was "facing a short term of jail, possibly, in Alaska based on [the pending New Mexico] charges" and that he wished to be transferred to Alaska where time spent in jail could count for good

4

time credit toward an Alaska sentence, as opposed to serving in New Mexico where there would be no credit given toward the Alaska sentence. Defendant further explained that he had a civil lawsuit pending against the Department of Corrections in Alaska and asserted that the State had prevented his transfer to Alaska.

{5}     The court again stated that it had not read the transcript of the hearing in which the prior judge denied Defendant's motion to dismiss on speedy trial grounds, and the court expressed that it did not feel comfortable reversing the previous judge's ruling when the court was unfamiliar with the circumstances of that ruling, thus constituting a verbal denial of Defendant's motion. In response, the defense requested an interlocutory appeal. At that point, the court offered Defendant an opportunity either to apply for an interlocutory appeal or to receive a quick, firm trial setting. Defendant opted to apply for interlocutory appeal based on the court's verbal denial of the motion. The court provided Defendant with a September trial setting in the event that this Court denied the application for interlocutory appeal.

{6}     Defense counsel was substituted in July 2014, and in August 2014, Defendant filed a motion to reconsider the court's verbal denial of his motion to dismiss for lack of a speedy trial. The State responded to Defendant's motion to reconsider, and the court held a hearing on the matter in September 2014. Defendant was not in attendance at the hearing because he was in custody in Alaska. After hearing the

5

parties' arguments, the court indicated that the trial "should have been set more [often] by the Bench" but it felt that it could not "blame the State for the lack of setting[,]" and it therefore effectively denied the motion to reconsider. Thereafter, on September 4, 2014, the district court entered its written order denying the motion to dismiss, which it later amended on October 8, 2014. This interlocutory appeal of that order followed.[1]

**DISCUSSION**

{7}    "The right to a speedy trial is a fundamental right of the accused." *State v. Garza*, 2009-NMSC-038, ¶ 10, 146 N.M. 499, 212 P.3d 387; *see* U.S. Const. amend. VI (guaranteeing a speedy trial "[i]n all criminal prosecutions"); N.M. Const. art. II, § 14 (same). "[A]ny determination of whether the right has been violated depends on an analysis of the peculiar facts and circumstances of each case." *State v. Spearman*, 2012-NMSC-023, ¶ 16, 283 P.3d 272 (internal quotation marks and citation omitted).

{8}    In evaluating speedy trial claims, our courts have adopted the four-factor balancing test from *Barker v. Wingo*, 407 U.S. 514 (1972). *Garza*, 2009-NMSC-038,

---

[1] It appears to us as unusual for the district court to have offered Defendant the option to pursue an interlocutory appeal on the issue of a violation of Defendant's right to a speedy trial, especially given that it does not appear to involve a controlling question of law as to which there is substantial ground for difference of opinion, and this appeal ultimately ended up delaying the case even further. We question whether interlocutory appeals that involve the weighing of speedy trial *Barker* factors are appropriate, as they only seem to exacerbate, rather than remedy, the issue of delay.

¶ 13. The *Barker* factors require us to consider: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant incurred from the delay." *State v. Thomas*, 2016-NMSC-024, ¶ 10, 376 P.3d 184. "Each of these factors is weighed either in favor of or against the [prosecution] or the defendant, and then balanced to determine if a defendant's right to a speedy trial was violated." *Spearman*, 2012-NMSC-023, ¶ 17. In analyzing a district court's ruling regarding a motion to dismiss due to a speedy trial violation, we give "deference to the district court's factual findings, but . . . review the weighing and the balancing of the *Barker* factors de novo." *Spearman*, 2012-NMSC-023, ¶ 19 (alterations, internal quotation marks, and citation omitted).

{9}    Here, the district court entered, in relevant part, the following findings of fact in support of its order denying Defendant's motion to dismiss:

(1)    that this case is of intermediate complexity;

(2)    that [D]efendant has been incarcerated for [23] months without his case being called up for trial;

(3)    that . . . [D]efendant did not contribute to the delay;

(4)    that the delay was primarily due to a previous judge failing to bring the case on for trial;

(5)    that . . . [D]efendant made five separate demands to be brought to trial during the past [23] months;

7

(6)     that . . . [D]efendant provided the [c]ourt with a sworn affidavit listing the forms of prejudice that he has suffered both personally and to his defense as a result of his incarceration[.]

We address each *Barker* factor in light of these facts.

**Length of Delay**

{10}     We first consider the length of the delay, which serves two purposes:

First, it acts as a threshold triggering mechanism used to determine whether the delay is presumptively prejudicial so as to continue with a full speedy trial analysis. Second, it is the first independent *Barker* factor that must be addressed to determine whether a defendant's speedy trial rights have been violated. If the delay crosses the presumptively prejudicial threshold, a speedy trial analysis is warranted. A delay is presumptively prejudicial if the delay exceeds [12] months for a simple case, [15] months for a case of intermediate complexity, and [18] months for a complex case.

*State v. Brown*, No. 34,388, 2017 WL 887169, 2017-NMCA-__, ¶ 14, __ P.3d __ (March 2, 2017) (alterations, internal quotation marks, and citations omitted). "[T]he parties' fault in causing the delay is irrelevant to the analysis of the first *Barker* factor[,]" and "[a] delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused[.]" *State v. Serros*, 2016-NMSC-008, ¶ 26, 366 P.3d 1121. "In terms of the weight given to the length of the delay, the greater the delay, the more heavily it will potentially weigh against the prosecution." *State v. Steinmetz*, 2014-NMCA-070, ¶ 6, 327 P.3d 1145 (alterations, internal quotation marks, and citation omitted).

**{11}** Here, the district court determined and the parties agree that this case is of intermediate complexity. *See State v. Plouse*, 2003-NMCA-048, ¶ 42, 133 N.M. 495, 64 P.3d 522 ("We give due deference to the district court's findings as to the level of complexity."), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. The parties also agree that the delay of 23 months exceeded the 15-month benchmark for cases of intermediate complexity, and thus a speedy trial analysis is triggered. The State argues that this factor should weigh only slightly against it. Defendant argues that this factor should weigh moderately against the State.

**{12}** Defendant highlights this Court's logic in *State v. Taylor*, 2015-NMCA-012, ¶ 9, 343 P.3d 199, that held that a delay nearly twice as long as the 12-month threshold for simple cases weighed heavily against the prosecution. Conversely, the State highlights *State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820, that held that a six-month delay beyond the 15-month threshold weighed only slightly against the prosecution.

**{13}** Because cases that are comparable in complexity and length weigh this factor slightly to moderately against the prosecution and because we see no value to discerning the weight more specifically in this case, we conclude that this factor weighs slightly to moderately against the State. *See State v. Suskiewich*, 2016-NMCA-004, ¶¶ 6-8, 363 P.3d 1247 (holding that a 24-month delay in a case of intermediate

9

complexity weighed moderately against the prosecution); *Montoya*, 2011-NMCA-074, ¶ 17 (holding that a 21-month delay in a case of intermediate complexity weighed only slightly against the prosecution).

**Reasons for Delay**

{14} "Closely related to length of delay is the reason the government assigns to justify the delay." *Garza*, 2009-NMSC-038, ¶ 25 (internal quotation marks and citation omitted). "The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay." *Id.* (internal quotation marks and citation omitted). According to *State v. Montoya*, 2015-NMCA-056, ¶ 16, 348 P.3d 1057:

> We assign different weight to different types of delay. There are three types: (1) deliberate or intentional delay, (2) negligent or administrative delay, and (3) delay for which there is a valid reason. Deliberate delay is to be weighted heavily against the government. Negligent or administrative delay weighs against the state, though not heavily. . . . [D]elay that results from lack of diligence on the part of the state weighs more heavily than do institutional delays that are inherent in the criminal justice system.

(Alterations, internal quotation marks, and citations omitted.)

{15} Defendant admits that the State did not act in bad faith to deny him his right to a speedy trial, but argues that his case was delayed because the State was not diligent in "calling out [the] judge on his docketing practices." Defendant argues that the State was "acutely aware, and apparently legitimately flummoxed with [its] inability to get

trial and other settings from the second presiding judge[,]" and thus the delay was more than merely administrative. Defendant asserts that the delay should weigh more heavily against the State.

{16}    Defendant also highlights other delays that he attributes to the State, including a request for a continuance on a suppression hearing, submitting untimely filings, and failing to seek a transport order on one occasion. Defendant argues that these case management issues constitute administrative delay and weigh moderately against the State. He concludes that the delays created by the State's lack of diligence, coupled with the administrative or negligent delays, weigh "at least moderately heavy against the State, depending on the level of egregiousness [this] Court attaches to the prosecutor's knowing failure to address the [district c]ourt's well recognized docketing style's burdens on the constitutional right to speedy trial."

{17}    The State responds that some portions of the delay weigh neutrally, some against Defendant, and others only slightly against the State, and thus "weighing any portion of the delay more than slightly against the State is not warranted." It argues that the first one and one-half months of the case proceeded with neutral promptness that should not weigh against either party. The next 13 months constituted administrative delay that should weigh slightly against the State. The next one and one-half months was negligent delay that should weigh slightly against the State. The

following four months were neutral or, at most, administrative delay that should weigh slightly against the State. It then argues that the next three months should weigh against Defendant because he rejected the court's offer of a June or July 2014 trial setting and did not appeal the decision promptly.

**{18}** As noted earlier in this opinion, the district court determined that Defendant did not contribute to the 23-month delay and that the delay was primarily due to the prior judge failing to bring the case on for trial. Neither party disputes the length of delay or that the delay was in large part due to negligence or administrative difficulties related to the court's docket and setting the case for trial. We conclude that the reason for delay in this case was primarily administrative or negligent, which "weighs against the [S]tate, though not heavily." *Id.*; *see Thomas*, 2016-NMSC-024, ¶ 12 (holding that delay due to a vacancy on the bench and the unavailability of a forensic analyst for pretrial interviews was administrative and negligent that weighed against the prosecution but not heavily); *Garza*, 2009-NMSC-038, ¶ 29 (recognizing administrative delays related to overcrowded courts, congested dockets, the unavailability of judges, or an understaffed prosecutor's office are considered negligent delays).

**Assertion of the Right**

12

{19} "Under this factor, [the appellate courts] assess the timing of the defendant's assertion and the manner in which the right was asserted." *Spearman*, 2012-NMSC-023, ¶ 31 (internal quotation marks and citation omitted). "We consider whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as an afterthought." *Montoya*, 2015-NMCA-056, ¶ 22 (alteration, internal quotation marks, and citation omitted).

{20} Defendant argues that he asserted his right to a speedy trial in writing on five separate occasions. Specifically, he points to: (1) the October 10, 2012 assertion in his public defender's entry of appearance in magistrate court; (2) the December 11, 2013 motion to dismiss for lack of a speedy trial; (3) the April 24, 2014 motion to dismiss for lack of a speedy trial; (4) the May 7, 2014 motion to dismiss, memorandum and affidavit; and (5) the August 27, 2014 motion to reconsider the motion to dismiss. Defendant also points to a habeas corpus pleading he filed, two affidavits outlining the prejudice he was suffering due to the delay, and numerous requests for settings during which Defendant wished to address the speedy trial issues. He argues that his assertions of speedy trial rights weigh heavily in his favor.

{21} The State acknowledges that Defendant asserted his right to a speedy trial, but argues that those assertions weigh only slightly against the State. The State argues that Defendant's first demand in magistrate court was a pro forma demand that should be

13

afforded minimal weight, if any. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061 (stating that "pro forma motions are generally afforded relatively little weight in [a speedy trial] analysis"), *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48. It then argues that, although motions to dismiss for lack of a speedy trial would normally weigh in a defendant's favor, Defendant's motions were filed after the 15-month threshold had passed, and Defendant rejected an offer of a July 2014 trial setting, thus mitigating the assertion of his speedy trial rights. The State asserts that the motions filed in April and May 2014 are entitled to no weight because they resulted in the court's rejected offer of a trial setting and that the August motion to reconsider should weigh against Defendant because it was filed after he rejected that setting.

{22} Our standard of review requires that we give deference to the district court's factual findings. The court's finding regarding the assertion of Defendant's right was that "[D]efendant made five separate demands to be brought to trial during the past [23] months[.]" Given that Defendant made five separate demands, the relevant inquiry is not whether there was an assertion but rather how heavily his assertions weigh in his favor.

{23} In *Garza*, 2009-NMSC-038, ¶ 34, our Supreme Court held that a single demand for a speedy trial tucked within a waiver of arraignment was not "especially vigorous"

14

but nevertheless weighed it slightly in the defendant's favor. In *State v. Moreno*, 2010-NMCA-044, ¶ 35, 148 N.M. 253, 233 P.3d 782, this Court held that when a defendant asserted his right twice—once pro forma at the beginning of his case and a second time approximately two and one-half months before his trial date—it weighed slightly in the defendant's favor. In *Montoya*, 2015-NMCA-056, ¶¶ 23-24, this Court held that this factor weighed slightly to moderately in the defendant's favor when he asserted his right three times, made persistent efforts to prepare his defense, and the district court had admonished the prosecution on several occasions for failing to move the case forward. Finally, in *State v. Flores*, 2015-NMCA-081, ¶ 32, 355 P.3d 81, this Court held that this factor weighed heavily in the defendant's favor where the defendant asserted his right at least four times, which included two demands and two motions to dismiss for violation of the defendant's speedy trial rights.

{24} Even if we accept the State's position that Defendant's first demand was pro forma, his subsequent demands were beyond the 15-month threshold, and his final demand occurred after he rejected an earlier trial date, the number of demands coupled with the district court's finding that Defendant did not contribute to the delay leads us to conclude that this factor weighs moderately to heavily in Defendant's favor.

**Prejudice**

15

{25} Our Supreme Court has addressed how we examine the prejudice factor. In *Garza*, 2009-NMSC-038, ¶ 35, the Court explained:

> The United States Supreme Court has identified three interests under which [the appellate courts] analyze prejudice to the defendant: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. As to the first two types of prejudice, some degree of oppression and anxiety is inherent for every defendant who is jailed while awaiting trial. Therefore, . . . this factor [is weighed] in the defendant's favor only where the pretrial incarceration or the anxiety suffered is undue. The oppressive nature of the pretrial incarceration depends on the length of incarceration, whether the defendant obtained release prior to trial, and what prejudicial effects the defendant has shown as a result of the incarceration. However, without a particularized showing of prejudice, [the appellate courts] will not speculate as to the impact of pretrial incarceration on a defendant or the degree of anxiety a defendant suffers.

(Alterations, internal quotation marks, and citations omitted.) Our Supreme Court held that "generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect. However, if the length of delay and the reasons for the delay weigh heavily in defendant's favor and defendant has asserted his right and not acquiesced to the delay, then the defendant need not show prejudice for a court to conclude that the defendant's right has been violated." *Id.* ¶ 39.

{26} Before addressing the parties' arguments on appeal regarding prejudice, we consider it useful to lay out the actual prejudice Defendant alleged to have suffered as presented in his two sworn statements. In his May 2014 declaration, Defendant

16

stated, in relevant part, that he had been incarcerated since September 11, 2012; he had an eight-year-old son in Alaska to support; he had a pending civil claim against the Alaska Department of Corrections and the current case was greatly affecting his ability to litigate that case; and his family had posted his bond so he could be extradited to Alaska, but that the State had prevented Alaskan authorities from transferring him. In his August 2014 affidavit, Defendant additionally stated, in relevant part, that he had been incarcerated for 23 months without trial; his son and son's mother were living in poverty because he was unable to support them, he was missing out on his son's life, and Defendant's mother was homeless because he was unable to provide support; he was denied the opportunity to seek multiple employment opportunities with "Nabors Alaska Drilling, DWG Drilling, Arctic MATS, and for Darrel Green"; he had been idle at the Valencia County Detention Center (VCDC), which detrimentally affected him physically and emotionally; he suffered injuries and infection at VCDC; he had been "prescribed medication for anxiety and depression[,] which was necessitated by the accusations and the long-term incarceration"; VCDC offered no recreational or rehabilitative programs or law library; and during the 23 months of incarceration, he had forgotten material facts regarding the alleged crimes and no longer had contact with persons who might appear as witnesses.

{27}   Defendant argues that his evidence of actual prejudice, as presented to the district court via his affidavits, went unchallenged by the State or the court. He argues that because the State did not challenge the affidavits at the district court level, it did not preserve any challenges to the sufficiency or credibility of those statements. He argues that he established that he suffered actual prejudice, in part, because he was initially held on a no-bond hold and then on a bond that he could not afford. He explains that the State was slow to respond to his request for a reduction in the bond, and the court was slow to provide a setting to address that request. He asserts that the State's refusal to work with Alaska and Defendant resulted in a lengthy pretrial incarceration that established actual prejudice. Defendant also argues that his affidavits evidence particularized prejudice in the form of "familial association detriments," lost jobs, anxiety and concern, and detriment to his defense because of memory impairment and damage to establishing an alibi.

{28}   The State responds that Defendant was held on a no-bond hold as a direct result of his convictions in Alaska. It also challenges Defendant's claims that he was prejudiced by his inability to see his son and his inability to assist with his pending civil lawsuit in Alaska on the ground that Defendant waited over 15 months to pursue a reduction of his bond. The State also challenges Defendant's claims of memory impairment or damage to his ability to establish an alibi with the assertion that

18

Defendant confessed to the robberies and was reportedly caught on video camera committing the crimes. The State contends that Defendant's claim that he was denied the opportunity to seek multiple employment opportunities was meritless because he was in custody in Alaska and provided no evidence that he, as a convicted felon, would actually be offered a job. Finally, the State asserts that Defendant offered no evidence he was prescribed medication for anxiety or depression or was otherwise dealing with medical issues at VCDC. It therefore argues that Defendant failed to demonstrate undue prejudice resulting from his pretrial incarceration.

{29} We begin our analysis by noting that the district court found that "[D]efendant provided the [c]ourt with a sworn affidavit listing the forms of prejudice that he has suffered both personally and to his defense as a result of his incarceration[.]" We read the court's determination as an adoption of the facts as provided by Defendant in his affidavits. And although the affidavits do not provide a lot of detail, we note that the State never specifically responded to either of Defendant's affidavits in writing and never challenged Defendant's claims of prejudice at the district court level, except to clarify that he was being held for a period due to a hold from Alaska. *See* Rule 12-321(A) NMRA ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."); *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (same).

**{30}** Given the evidence offered in the affidavits and given the lack of evidence or argument by the State before the district court regarding those affidavits, we conclude that this factor weighs in favor of Defendant. We hold that Defendant was prejudiced by his lengthy pretrial incarceration of 23 months. *See State v. Ochoa*, 2014-NMCA-065, ¶ 23, 327 P.3d 1102 (holding that the defendant's pretrial incarceration of 24 months proved prejudice); *Moreno*, 2010-NMCA-044, ¶ 37 (holding that the defendant "did suffer some prejudice from being incarcerated pending trial for almost two years"). In addition, we hold that Defendant suffered prejudice in the form of familial harm, lost jobs, anxiety and concern, and impairment to his defense as outlined in his affidavits. *See Garza*, 2009-NMSC-038, ¶ 35 (noting that the interests under which we analyze prejudice are "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired" (internal quotation marks and citation omitted)).

**Balancing the *Barker* Factors**

**{31}** Because the delay in this case was beyond the relevant threshold of 15 months and because all of the *Barker* factors weigh in favor of Defendant, we conclude that Defendant's right to a speedy trial was violated.

**CONCLUSION**

{32}     Because Defendant's right to a speedy trial was violated, we reverse the district court's denial of Defendant's motion to dismiss for speedy trial violation and remand for further proceedings consistent with this opinion.

{33}     **IT IS SO ORDERED.**


_____

**JONATHAN B. SUTIN, Judge**

**WE CONCUR:**


_____

**JAMES J. WECHSLER, Judge**


_____

**J. MILES HANISEE, Judge**