Argued and submitted May 9, affirmed December 14, 2005, petition for review
denied April 11, 2006 (340 Or 411)

Dorothy MAAS,
*Appellant,*

*v.*

Greg WILLER,
dba Wickiup Towing,
and Shirlie Defoe,
*Respondents.*

03CV 0065 AB; A123863

125 P3d 87

Laura L. Rhodes argued the cause for appellant. With her on the brief were J. Randolph Pickett and Pickett Dummigan Rhodes LLP.

Ralph Spooner argued the cause for respondent Shirlie DeFoe. With him on the brief were Melissa J. Ward and Spooner, Much & Ammann, P.C.

No appearance for respondent Greg Willer.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Schuman, Judge.

BREWER, C. J.

---

* Brewer, C. J., *vice* Richardson, S. J.

**BREWER, C. J.**

Plaintiff brought this negligence action for personal injuries arising from her fall on a walkway on defendants' premises. She appeals from a judgment on a jury verdict for defendants. In her sole assignment of error, plaintiff argues that the trial court erred in instructing the jury as to what constituted an "unreasonably dangerous condition" and, as a consequence, mistakenly suggested that plaintiff's negligence, if any, was a complete bar to her recovery. We affirm.

Plaintiff's husband worked as a tow truck driver for Wickiup Towing, a business owned by defendant Willer. Willer lived in a residence owned by defendant DeFoe. On August 1, 2002, during the daytime, plaintiff went to Willer's residence to pick up her husband's paycheck. Plaintiff had visited the premises on at least 15 previous occasions. On the majority of those previous visits, plaintiff had walked across a grassy area to the side door of the house. On the instant occasion, though, a van was parked on the grassy area. As a consequence, plaintiff took a different route to the house, walking along a concrete sidewalk that led to the side door. The van that was parked on the lawn partially obstructed the sidewalk.

Plaintiff knocked on Willer's side door, but there was no answer. Plaintiff then turned around and started back to her car. She returned via the sidewalk that was partially obstructed by the van. As plaintiff walked around the van, she tripped and fell on a break in the sidewalk. Plaintiff testified that, if she had seen the break in the sidewalk, she could have avoided it by stepping over it. However, plaintiff testified that she was looking at the van when she tripped and had not observed the condition of the sidewalk before she fell. As a result of the fall, plaintiff suffered injury to her right ankle, which required surgical repair.

Plaintiff then filed this action for negligence based on defendants' alleged maintenance of the sidewalk in an unreasonably dangerous condition. As an affirmative defense, defendants asserted that plaintiff herself was negligent in failing to observe and avoid the break in the sidewalk. At trial, the court instructed the jury as follows:

"Now in this case we have two Defendants and I think you've heard them referenced as the landlord and the tenant. It is the duty of landlord and the tenant of premises to make the premises reasonably safe for [an] invitee's visit. I'm going to tell you what an invitee is in just a minute. But it's their duty to make the premises reasonably safe for the visit. * * * The landlord and tenant must exercise reasonable care either to eliminate the condition creating the risk or to warn if foreseeable—foreseeable invitee of the risk so as to enable the invitee to avoid the harm.

"Now I told you [that] I [will] define invitee. I used that word in the last part. An 'invitee' is one who goes on the premises of another, at the other's invitation, either express or implied and whose presence there is in [the] economic interest of the other.

"I'm going to tell you what an invitee's duty is. And in this case the Plaintiff is the invitee. The invitee is required to exercise reasonable care to avoid harm from a condition of the premises of which the invitee knows or in the exercise of reasonable care should know. In determining and comparing negligence, if any, you must consider the obviousness of the danger and the ease or difficulty with which harm to the Plaintiff and the injur[ies] could have been avoided by either party.

"* * * I'm going to give you a definition for unreasonably dangerous condition. It is a condition [that] is considered unreasonably dangerous if it cannot be encountered with reasonable safety, even if the danger is known and appreciated. A condition is not unreasonably dangerous if the hazard arising from it would be known and understood by reasonable persons expected to encounter the condition."

Plaintiff excepted to the instruction on the ground that it prevented the jury from properly evaluating the comparative fault of the parties by directing the jury to treat plaintiff's negligence, if any, as a complete bar to her recovery. The court nonetheless adhered to the instruction.

In addition, the court gave the following instruction regarding comparative negligence:

"Now the parties in this case claim that the injury was the fault of one or more parties in this case. You can see that everyone is making claims against the other for negligence

on the other person's part. And you need to resolve that conflict. That's going to be one of your jobs. So first you need to decide who, if anyone, was at fault in causing the injury or the damages that are claimed in the pleadings. Next if more than one is at fault, if more than one of the parties was negligent, you need to compare the negligence of each to the other. In making this comparison you are to measure the percentage of negligence of each and [ ] not the percentage of damage caused by each. Now this comparison of negligence must be expressed in terms of percentages that ultimately total one hundred percent. So you're going to have three blanks in your verdict form, you need to determine the existence of negligence o[r] lack of existence of negligence of each of the three parties on that verdict form and ultimately, if you're going through that, and you're putting percentage in there, you need to add it up and it needs to add up to a hundred percent. By instructing that way I'm not telling you that you have to come up with a percentage of negligence, because first you have to determine if any of the parties were negligent. So you need to consider that matter first.

"Now if the Plaintiff's negligence is more than fifty percent, th[en] the Plaintiff will not be entitled to a verdict in her favor. If on the other hand * * * the Plaintiff's negligence is fifty percent or less the Plaintiff will be entitled to a verdict in her favor.

"Now i[n] assessing Plaintiff's damages, if any, you award the full amount and then I will reduce any amount you award by the percentage of the Plaintiff's negligence, if any."

As noted, the jury's verdict was for defendants, and the trial court entered judgment on the verdict.

■ ■　　On appeal, plaintiff renews her challenge to the quoted instruction regarding what constituted an unreasonably dangerous condition.[1] She argues:

"If the jury were to conclude that [plaintiff] could have observed the condition and perceived the risk, and then safely encountered the risk, as she conceded during her trial testimony, then the defendants as the possessors of the

---

[1] Plaintiff did not except to the quoted comparative negligence instruction, nor does she challenge it on appeal.

premises cannot be found to be negligent for allowing the condition. This instruction essentially tells the jury that once they have concluded that the condition could have been appreciated and safely encountered by [plaintiff], then they need not reach the question as to whether defendants, as possessors of the premises, bear any responsibility. In effect, the jury's deliberation, which is mandated by this instruction, disregards the comparative fault system in Oregon because it prevents a weighing of the liability of all parties, including the defendants. It forecloses that option by focusing the jury's attention exclusively on [plaintiff's] actions."

We review jury instructions as a whole and will reverse only if we can fairly say that the instructions probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case. *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970); *Jett v. Ford Motor Company*, 192 Or App 113, 118-19, 84 P3d 219 (2003), *rev den*, 337 Or 160 (2004).

 In general, it is the duty of a possessor of land to act as a reasonable person would, or would not, act in the same or similar circumstances to discover conditions of the premises "that create an unreasonable risk of harm to [an] invitee." *Woolston v. Wells*, 297 Or 548, 557-58, 687 P2d 144 (1984). The possessor must exercise that standard of care either to eliminate such conditions or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm. *Id.* at 558. The invitee is required to exercise that same standard of care in avoiding harm from a condition of the premises of which the invitee knows, or, in the exercise of that standard of care, of which the invitee should know. *Id.*

██ The legislature has abolished both contributory negligence and implied assumption of the risk as defenses and has replaced them with comparative fault. *See* ORS 31.600 (replacing contributory negligence standard with comparative fault system); ORS 31.620(2) (abolishing doctrine of implied assumption of the risk). Accordingly, in premises liability cases grounded in negligence and in which comparative negligence is asserted as a defense, it is necessary to compare the negligence, if any, of the property owner or occupier and

the plaintiff in determining whether and the extent to which the defendant is liable to the plaintiff.

In *Woolston*, the plaintiff sought damages for injuries he sustained when he fell while ascending stairs to deliver a television to the landlord's tenant. The trial court instructed the jury on the basis of the *Restatement (Second) of Torts* sections 343(b) and 343 A(1) (1965). *Woolston*, 297 Or at 551-52. Section 343(b) provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> "* * * * *
>
> "(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it[.]'"

Section 343 A(1) provides:

> "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

The Supreme Court held both instructions invalid. The instruction based on section 343(b) "frustrate[d] the purpose of instituting a system of comparative fault," *Woolston*, 297 Or at 556, while the instruction based on section 343 A(1) "introduce[d] the concept of assumption of risk into the liability calculus[,]" *id.* at 555. That does not mean to say, however, that evidence of the plaintiff's actual or constructive knowledge is irrelevant to a premises liability negligence action. Rather, as the court stated in *Woolston*, "[i]n determining and comparing fault, the jury must necessarily consider the obviousness of danger and the ease or difficulty with which harm to the plaintiff from that danger could be avoided by either party." *Id.* at 558.

Plaintiff argues that *Woolston* requires reversal here because, in this case, as in *Woolston*, the instruction defining a dangerous condition as a condition that "cannot be encountered with reasonable safety, even if the danger is known and appreciated," gave the jury no choice but to determine the

fault of one party by reference to the actions of the other party. Plaintiff argues that, if the instruction given here accurately captures Oregon law,

> "how would a jury ever find liability against any defendant in a typical 'slip and fall' premises liability case? Specifically, how can this definition correctly state the law in a case involving a substance on the floor of a supermarket? If a shopper saw a banana on the floor, he or she could appreciate the hazard and could step over it or around it."

Defendant[2] responds that this case is controlled by *Jensen v. Kacy's Markets, Inc.*, 91 Or App 285, 754 P2d 624, *rev den*, 306 Or 413 (1988), a case in which we distinguished *Woolston* on grounds that defendant asserts are applicable here. In *Jensen*, the plaintiff was entering a store's premises when an automatic sliding door unexpectedly closed on her cane. She fell and was injured. She brought an action against the store, the manufacturer of the door, and the vendor/ installer of the door. The plaintiff claimed, among other things, that each defendant was negligent; the defendants alleged that the plaintiff herself was negligent. The jury found that none of the defendants was negligent. On appeal, the plaintiff argued that the trial court erred in giving the following instruction:

> " 'If there are conditions on premises which you find to be unreasonably dangerous as that expression is defined in these instructions, the possessor of the premises must exercise reasonable care to protect invitees from such condition, whether they are created by the possessor or by an independent contractor.

> " 'I have just instructed you about the general duty of care owed by possessors of premises to invitees. However, that duty applies only to conditions on the premises that create an unreasonable risk of harm to an invitee. If the condition complained of by Plaintiff is a condition that people would encounter and would be expected to take care of themselves without further precaution by the possessor of the premises, the condition is not considered unreasonably dangerous because the

---

[2] Only defendant Shirlie DeFoe appears on appeal. All references in this opinion to "defendant" are to her.

likelihood of harm is slight. A condition is only considered unreasonably dangerous when it cannot be encountered with reasonable safety, even if the danger is known and appreciated.

" 'A condition is not unreasonably dangerous if the hazard arising from it would be known and understood by reasonable persons expected to encounter the condition.' "

*Id.* at 287.

The plaintiff argued that the instruction impliedly raised assumption of risk as a defense by defining the defendant's duty in terms of the plaintiff's actions. In rejecting that argument, we explained:

"Oregon has abolished assumption of risk and has adopted comparative fault. If the instruction implied to the jury what plaintiffs claim that it did, it was reversible error.

" 'Instructing the jury that defendant has no liability because of actions of the plaintiff, or that defendant is liable only if a reasonable person entering the land would not realize a danger or would not protect himself against it, frustrates the purpose of instituting a system of comparative fault. The comparison of the parties' fault will only be meaningful if each party's fault is determined without reference to the other party or to a class or group which includes the other party.' [*Woolston*], 297 Or at 556.

"*See also Nylander v. State of Oregon*, 292 Or 254, 260, 637 P2d 1286 (1981).

"Instructing the jury in a case such as this is difficult, because the question of whether a condition creates an 'unreasonable risk of harm'—an element of assessing the defendant's liability—often depends on the knowledge of reasonable persons who may be expected to use the premises. *See* [*Woolston*], 297 Or at 560 (Peterson, C. J., concurring). Whether the sliding door presented an unreasonable risk of harm depends in part on whether a *reasonable person* would appreciate the risk presented by the door. The question of whether Jensen was contributorily negligent may involve *her* appreciation of the risk presented by the sliding door. Because the definition of unreasonable risk of

harm closely resembles the issue of contributory negligence, instructions must distinguish the two matters.

"Here, the instructions did so. The judge explained the concept of comparative fault and properly instructed the jury on it. Next, he told the jury:

> " 'A possessor of premises is not an insurer or guarant[or] of the safety of invitees upon the premises[;] rather the possessor's duty is one of reasonable care under the circumstances, which I will now define for you.

> " 'If a person is an invitee on premises, the possessor owes to the invitee the duty to exercise reasonable care for the invitee's safety to maintain the premises in a reasonable [*sic*] safe condition, and use ordinary care to provide notice of any concealed danger of which the possessor of the premises has knowledge, and for which [*sic*] in the exercise of reasonable care the possessor should have discovered.'

"Those paragraphs correctly state the law, *see* UJI 120.08. They were followed by the instructions that plaintiffs claim were erroneous, the last two sentences of which most closely resemble assumption of the risk:

> " 'A condition is only considered unreasonably dangerous when it cannot be encountered with reasonable safety, even if the danger is known and appreciated. A condition is not unreasonably dangerous if the hazard arising from it would be known and understood by reasonable persons expected to encounter the condition.'

"In context, however, those sentences did not suggest that, if Jensen should have appreciated the risk from the sliding door, then defendant was without fault. Rather, the challenged instruction defined an 'unreasonable risk of harm' and nothing more."

*Jensen*, 91 Or App at 288-89 (emphasis and last four sets of bracketed material in original; footnote omitted).

Plaintiff argues that *Jensen* is distinguishable in two respects. First, plaintiff argues that, unlike in *Jensen*, when the trial court's instructions here are read in context with its other instructions concerning the parties' duties, standard of care, and comparative fault, they fail to properly distinguish

between the concept of comparative negligence and the definition of an unreasonably dangerous condition. Although plaintiff sets out in her brief the pertinent instructions given in this case and *Jensen*, she does not elaborate on what she perceives to be a meaningful distinction between them. In fact, we perceive no such distinction. The instruction defining an unreasonably dangerous condition that the trial court gave in this case is essentially identical to the instruction given in *Jensen*. It also is consistent with the Supreme Court's statement in *Woolston* that a possessor of land must act as a reasonable person would, or would not, act in the same or similar circumstances to discover conditions of the premises "that create an unreasonable risk of harm to an invitee." 297 Or at 558. As that formulation reveals, the concept of "reasonableness" has a dual role in negligence-based premises liability cases—it refers both to the parties' conduct and to the condition that caused the plaintiff's injuries. That duality caused us in *Jensen* to remark that instructing the jury in such cases is difficult. *Jensen*, 91 Or App at 288. However, as in *Jensen*, the trial court in this case surmounted that difficulty by giving separate instructions on comparative fault and the definition of unreasonable risk of harm. In so doing, the court avoided creating an implication that plaintiff's negligence, if any, was a complete bar to her recovery.

Plaintiff next asserts that *Jensen* is distinguishable on its facts. Plaintiff observes that the defect in *Jensen* involved a "mechanical" door, whereas the defect in this case involved a "static" condition, that is, a break in a sidewalk. Plaintiff asserts that the risk of unreasonable harm associated with a static condition is not as "apparent" as with a mechanical defect, because "[e]very person is aware of how an automatic sliding door is expected to operate, *i.e.*, it opens and closes; thus, the risk of harm that is presented based upon a mechanical defect is an anticipated risk that arises out of its intended function."

We see the distinction that plaintiff draws, but we fail to understand the difference. In the abstract, whether a condition that causes an injury is static or dynamic does not, itself, control the question whether the condition creates an unreasonable risk of harm. Nor do the cases draw such a distinction. In *Andrews v. R.W. Hays Co.*, 166 Or App 494, 503,

998 P2d 774 (2000), for example, the plaintiff tripped on a one and one-half inch step-down in a parking lot that she perceived to be level, and the defendants had provided no warning of the step-down. Relying on *Jensen*, we upheld summary judgment for the defendants on the ground that, as a matter of law, the condition—albeit, in plaintiff's terms, "static"—was not unreasonably dangerous. *Id.* at 505. Likewise, in *Glorioso v. Ness*, 191 Or App 637, 639, 645, 83 P3d 914, *rev den*, 336 Or 657 (2004), we upheld summary judgment for the defendants where the plaintiff had tripped and fallen on a "static" condition, namely, the step of a deck that was composed of like material above and below and, therefore, appeared to be level. In those cases, as here, the dispositive issue was whether the condition created an unreasonable risk of harm to the invitee, not whether the condition was "mechanical" or "static."

Finally, plaintiff urges that, if *Jensen* is not distinguishable, we should overrule it on the ground that it is inconsistent with *Woolston*. Because we conclude that we properly applied *Woolston* in *Jensen*, we decline plaintiff's invitation.

The instruction given in this case was an accurate statement of the law and, accordingly, the trial court did not err in giving it.

Affirmed.