Argued and submitted May 22, 2018, affirmed May 19, 2021

David APPLEYARD,
*Plaintiff-Appellant,*

*v.*

PORT OF PORTLAND,
*Defendant-Respondent.*

Multnomah County Circuit Court
16CV05139; A164927

492 P3d 71

Plaintiff brought this premises-liability action against defendant, seeking damages for injuries that he sustained after tripping over his own luggage and cutting his foot on the bottom edge of a baggage carousel at the Portland International Airport. Plaintiff appeals a judgment of dismissal entered after the jury returned a defense verdict based on its finding that plaintiff was more at fault for his injury than defendant. Both of plaintiff's assignments of error rest on the same premise: that, because plaintiff neither knew nor had any reason to know that the base of defendant's baggage carousel had a dangerously sharp edge, no fault can be attributed to him for the injury that he suffered as a result of that condition. *Held*: The trial court did not err in dismissing plaintiff's claim. An invitee's failure to exercise reasonable care for his or her own safety may be the basis of a comparative-fault defense if the invitee's negligence relates and contributes to the harm or risk of harm created by the defendant's negligence. Under those circumstances, whether the plaintiff knew or could have known that an alleged dangerous condition was on the premises is not determinative.

Affirmed.

Leslie G. Bottomly, Judge.

Joshua S. DeCristo argued the cause and filed the briefs for appellant.

Gregory J. Miner argued the cause for respondent. Also on the brief was Bateman Seidel Miner Blomgren Chellis & Gram, P.C.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

DeHOOG, P. J.

Affirmed.

_____

* DeVore, J., *vice* Hadlock, J. pro tempore.

## DeHOOG, P. J.

Plaintiff brought this premises-liability action against defendant, Port of Portland, seeking damages for injuries he sustained when he tripped over his own luggage and cut his foot on the bottom edge of a baggage carousel at the Portland International Airport (PDX). Plaintiff now appeals a general judgment of dismissal entered following a jury verdict in defendant's favor. The jury found that, although the fault of each party had been a cause of plaintiff's injury, plaintiff was more at fault than defendant; plaintiff, therefore, was not entitled to recover, and the trial court dismissed his claim. As we discuss below, plaintiff presents his appeal as raising a novel question of law: whether, in a premises-liability case, a business invitee's negligent conduct can give rise to comparative fault[1] when the invitee did not know and could not have known of the presence of the dangerous condition or unreasonable risk of harm that allegedly caused the invitee's injury. Plaintiff argues that his status as a business invitee on defendant's premises limited his duty of care to acting reasonably to avoid harm from conditions of which he was, or at least should have been, aware, which, he contends, did not include the sharp underside of the baggage carousel. Defendant responds that a plaintiff's reasonable care for his own safety is always relevant to comparative fault, even in a premises-liability case. For the reasons that follow, we conclude that the trial court did not err in dismissing plaintiff's claim. Accordingly, we affirm.

At the outset, we clarify our understanding that, although plaintiff raises two assignments of error on appeal, his assignments share a single premise, and our assessment of that premise will determine that outcome of this appeal. Plaintiff argues under his first assignment of error that his negligence in tripping over his own luggage could play no

---

[1] The parties use the terms comparative fault, contributory fault, comparative negligence, and contributory negligence interchangeably throughout the record. To avoid confusion with the abrogated doctrine of contributory negligence, *see* ORS 31.600, and to remain consistent with recent Supreme Court articulation, we refer only to comparative fault and comparative negligence in this opinion. *See State v. Gutierrez-Medina*, 365 Or 79, 84, 442 P3d 183 (2019) (explaining that although the title of ORS 31.600 continues to use "comparative negligence," the concept is readily known as "comparative fault").

role in the jury's attribution of fault for his injury.[2] In his second assignment of error, plaintiff argues that there was no evidence to support defendant's assertion that he was negligent with regard to the injury that he suffered. Ultimately, both assignments of error rest on the same premise, which is that, because plaintiff neither knew nor had any reason to know that the base of defendant's baggage carousel had a dangerously sharp edge, no fault can be attributed to him for the injury that he suffered as a result of that condition. With that understanding in mind, we proceed.

## I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff's numerous assignments of error implicate various standards of review, not all of which require us to view the facts in the same light. However, to give context to the parties' arguments, we provide the following summary of the historical and procedural facts, none of which seem to be in material dispute. Plaintiff and his wife flew from Minnesota to Portland for their granddaughter's wedding. After landing at PDX, plaintiff went to a baggage carousel to retrieve their luggage. Plaintiff removed a suitcase from the carousel and placed it next to him. Plaintiff then reached for a second bag coming around on the carousel, but, as he did so, he tripped over the first bag, which caused him to fall. When plaintiff fell, his right foot was thrust upward against the underside of the baggage carousel and, as a result, he suffered a deep cut to his foot. Plaintiff's injury required surgery, a three-day stay in the hospital, and roughly three months of recovery.

Following the accident, plaintiff sued defendant Port of Portland, which owns and operates PDX. Among

---

[2] It bears noting that, under his first assignment of error, plaintiff asserts a general challenge to the trial court's "rulings" related to the determination of comparative fault. Then, only under his preservation of error section does plaintiff purport to "assign as error" the trial court's specific rulings, including the court's denial of his (1) motion to strike, (2) motion for a directed verdict, (3) objections to jury instructions, (4) objection to the verdict form, (5) motion for judgment notwithstanding the verdict, and (6) motion for new trial. That approach does not comply with the applicable rules of appellate procedure. *See* ORAP 5.45(2) (requiring each assignment of error to be separately stated under a numbered heading); ORAP 5.45(3) (requiring each assignment of error to identify the specific *ruling* being challenged). However, because each of those specifications raises essentially the same legal question, our efforts to review plaintiff's appeal are not unduly impaired; for the same reason, we consider them collectively.

other things, plaintiff alleged that "a sharp metal edge on the baggage carousel housing" had "severely lacerated" his right foot. Plaintiff further alleged that the presence of the metal edge had created a dangerous condition and unreasonable risk of harm of which defendant had known or should have known.[3] At trial, plaintiff acknowledged having known that there was a space beneath the carousel "to stick your toes under if you were reaching over to get a bag." He denied, however, being aware of the character of the base of the carousel, such as the material or thickness of the trim. Plaintiff contended that defendant had been negligent and was liable for his injury because defendant had violated its duty to make the premises safe for its business invitees, including airline passengers.[4] An expert witness who testified on plaintiff's behalf acknowledged that the force generated by his fall had contributed to the severity of his injury. Plaintiff maintained, however, that, because the sharp edge was a dangerous condition and posed an unreasonable risk of harm, defendant had been negligent in failing to warn invitees of its presence and allowing it to remain. In its defense, defendant disputed that the edge of the carousel had been sharp and attributed plaintiff's injury to the blunt force created by his negligent fall.[5] More significantly for

---

[3] Plaintiff filed his complaint before we issued our decision in *Ault v. Del Var Properties, LLC*, 281 Or App 840, 847, 383 P3d 867 (2016), *rev den*, 361 Or 311 (2017), in which we explained that premises-liability claims alleging "unreasonably dangerous conditions" and claims alleging "unreasonable risks of harm" are distinct. However, throughout the ensuing litigation, most of which followed the issuance of *Ault*, plaintiff framed his arguments in terms of a "condition" on defendant's premises, focusing on the alleged sharp edge on the underside of defendant's baggage carousel, and defendant's arguments largely tracked that characterization. Ultimately, we do not understand any distinction between dangerous conditions and unreasonable risks of harm to be central to plaintiff's argument that, as a matter of law, no fault for his injury could be attributed to him; rather, his emphasis is on whether his own negligence was in relation to any risk or danger of which he knew or, under the circumstances, could have known.

[4] Neither party disputes that, under our case law, plaintiff's status was that of defendant's business invitee. *See e.g.*, *Towe v. Sacagawea, Inc.*, 357 Or 74, 87, 347 P3d 766 (2015) ("Under conventional common-law principles, when the defendant is an occupier of land and the plaintiff is someone who was injured on the defendant's land, the nature and scope of the defendant's liability to the plaintiff depends on the plaintiff's status as a licensee, an invitee, or a trespasser on the defendant's property.").

[5] Security footage presented at trial depicted plaintiff falling on his suitcase in such a way that his leg was forcefully leveraged against the carousel housing, with the suitcase acting as a fulcrum. Although defendant's answering brief

purposes of this appeal, defendant asserted as part of an affirmative defense of comparative negligence that plaintiff's own negligence had caused, in whole or in part, the injury that he had sustained.

At trial, plaintiff raised various challenges to defendant's assertion of comparative fault as an affirmative defense. Plaintiff first moved to exclude evidence of the defense and sought to have it stricken, arguing that his duty as an invitee was to take reasonable care to avoid conditions of which he was aware or should be aware, which, he contended, did not include the condition of the carousel. He later made essentially the same argument when arguing about jury instructions, and again when moving for a directed verdict as to the defense, objecting to the verdict form, moving for judgment notwithstanding the verdict (JNOV), and seeking a new trial. Each time, the trial court rejected plaintiff's argument that the jury should not be permitted to consider defendant's comparative-fault defense and that, even if the jury could consider comparative fault, his own negligence in tripping over his suitcase was immaterial to that defense.

In instructing the jury at the close of evidence, the trial court gave a series of instructions explaining premises liability, the duty that a possessor of land owes to its invitees, the duty of an invitee, comparative negligence, causation, and foreseeability. Over plaintiff's objection, the court instructed the jury regarding an invitee's duty as follows:

"COMPARATIVE NEGLIGENCE (INVITEE)

"An invitee is required to exercise reasonable care to avoid harm from a condition on the premises of which the invitee knows or, in the exercise of reasonable care, should know. A person has a duty to keep and maintain a reasonable lookout and control over bodily movements, for their own safety.

could be understood to argue that the condition of its baggage carousel presented neither a dangerous condition nor an unreasonable risk of harm, the jury found otherwise, and defendant has not cross-appealed or cross-assigned error to any ruling in that regard. Moreover, defendant acknowledged at oral argument that there was evidence at trial to support a jury finding that the baggage carousel trim had been sharp.

> "In determining and comparing negligence, if any, you
> must consider the obviousness of danger and the ease or
> difficulty with which harm to the plaintiff from that dan-
> ger could be avoided by either party."

(Boldface omitted.) Plaintiff objected to that instruction
on the ground that it misstated the law and was not sup-
ported by the evidence. He argued that the requirement in
the first paragraph, that a person "keep and maintain a
reasonable lookout and control over bodily movements, for
their own safety" (the lookout instruction), and the entire
second paragraph were inappropriate notwithstanding our
decision in *Vandeveere-Pratt v. Portland Habilitation Center*,
242 Or App 554, 556, 259 P3d 9 (2011), which defendant had
cited in support of the instruction. Additionally, he argued
that the lookout instruction improperly revived the concept
of implied assumption of the risk, a defense that the leg-
islature has abolished in Oregon.[6] Defendant's overarching
objection to the instruction was, as noted, the same as his
argument throughout the trial, namely, that, because he did
not know and could not know about the dangerous condition
that injured him, he could not be comparatively at fault for
his injury. Notwithstanding plaintiff's arguments, the trial
court gave the disputed instruction in its entirety.[7]

As to comparative negligence, generally, the trial
court gave an instruction that closely tracked the combined
language of UCJI 21.01 and UCJI 21.02 (which themselves
purport to implement ORS 31.600) as follows:

"COMPARATIVE NEGLIGENCE

"The law provides for comparative negligence. This
means that you are to determine each party's negligence, if
any. You will have one verdict form, which I will explain to
you.

---

[6] The legislature abolished the doctrine of implied assumption of the risk in
1975. *See Vandeveere-Pratt*, 242 Or App at 562 (acknowledging the doctrine was
abolished by *former* ORS 18.475(2) (1975), *renumbered as* ORS 31.620(2) (2003)).

[7] Plaintiff indicated that, to the extent that the trial court viewed the matter
as one better decided after all of the evidence had been heard, he would make his
argument in the context of a later motion to preclude all instructions related to
comparative fault. Although he did not expressly make such a motion, he effec-
tively did when, in the context of his motion for a directed verdict as to the affir-
mative defense of comparative fault, defendant argued that the defense should
not go to the jury.

"The plaintiff and the defendant have each alleged that the damage was caused by the other's fault. If you find that both the defendant and the plaintiff were at fault and that their fault caused the alleged damage, then you must compare the fault of the plaintiff to the fault of the defendant.

"In making this comparison, you must measure the percentage of fault of each and not the percentage of damage caused by each.

"The comparison of fault must be expressed in terms of percentages that total 100 percent. If the plaintiff's fault is more than 50 percent, then your verdict is for the defendant. On the other hand, if the plaintiff's fault is 50 percent or less, then your verdict is for the plaintiff.

"Do not reduce the amount of the plaintiff's damages, if any, as a result of your comparison. I will reduce the amount of your verdict by the percentage of the plaintiff's fault, if any."

(Boldface omitted.) Although plaintiff challenged defendant's assertion of *any* comparative-fault defense, he did not—and does not—dispute that, to the extent that the defense was available, the instruction that the court gave correctly stated the law.

The jury returned a defense verdict that included several special findings. First the jury found that defendant was at fault "in one or more of the ways" asserted by plaintiff; the jury further found that defendant's fault had been a cause of plaintiff's damages. However, the jury also found plaintiff at fault for his injury and found that, like defendant's fault, plaintiff's fault had been a cause of his damages. Based on its findings, the jury returned a verdict in favor of defendant, specifically finding plaintiff 51 percent at fault for his injury and defendant 49 percent at fault. In light of that result, the trial court dismissed plaintiff's claims with prejudice.[8]

## II.  THE PARTIES' ARGUMENTS ON APPEAL

Plaintiff now appeals the dismissal of his claims. In his first assignment of error, he argues that, as a matter of

---

[8] As the court instructed the jury, under ORS 31.600(1), a claimant is barred from recovery if his or her negligence was more responsible for the injury at issue than the combined fault of all the parties against whom recovery is sought.

law, the trial court improperly allowed the jury to consider his conduct in falling over his own bag as a basis for comparative fault. He emphasizes that, because this is a premises-liability case involving a possessor of land and a business invitee, the duties of each party are defined by their special relationship. Plaintiff asserts that, for two reasons, he cannot be deemed to share fault for his injury in this case. First, plaintiff argues, because defendant was shown to have been aware that invitees sometimes fall when collecting their luggage, defendant was responsible for providing reasonably safe premises to account for that foreseeable occurrence. Second, he argues, his failure to avoid tripping over his own bag was wholly independent of the dangerous condition at issue and, therefore, he could not have violated any duty in regard to that condition. Plaintiff reasons that, because his only duty as an invitee was to exercise reasonable care with respect to conditions of which he was aware or should have been aware—and it is undisputed that he had no reason to know of the sharp edge at the base of the carousel—no fault can be attributed to him for encountering that dangerous condition.

Plaintiff observes that this case raises a novel issue under Oregon law because, unlike the typical premises-liability case involving a comparative-fault defense, plaintiff's alleged negligence in this case was not that he had unreasonably failed to avoid or appreciate the specific instrumentality of his harm, namely, the sharp metal edge at the bottom of the baggage carousel; rather, defendant's theory was that plaintiff's negligence in tripping over his bag had "brought him" to that allegedly dangerous condition. However, plaintiff analogizes his case to *Son v. Ashland Community Healthcare Services*, 239 Or App 495, 244 P3d 835 (2010), *rev den*, 350 Or 297 (2011), a case in which the plaintiff's negligent drug overdose led her to an emergency room visit where she allegedly received negligent care. Plaintiff views our decision in *Son* as "highly instructive" due to its holding that a patient who negligently injures herself remains entitled to nonnegligent medical care. Plaintiff observes that, as in *Son*, the parties in this case were in a special relationship that defined their duties, and that, in each case, the negligent actions of the plaintiff "brought" him or her to

the negligence of the defendant. Plaintiff reasons that, just as the plaintiff in *Son* was entitled to nonnegligent medical care even though her own negligence had occasioned her need for care, he was similarly "entitled to a subsequently safe premises" in which to fall when he negligently (but, from defendant's perspective, foreseeably) tripped in defendant's baggage-claim area.

Plaintiff characterizes his argument under his second assignment of error as an alternative to his first, but, as noted, his second argument assumes the correctness of his assertion that he can bear no fault in relation to a condition of which he could not have been aware; in other words, the premise of his first assignment of error. From that premise, plaintiff argues that, even accepting that his negligence in tripping over his own suitcase could theoretically be weighed against defendant's negligence in failing to provide a safe baggage-claim area, it should not have been here, because there was no evidence that he knew or should have known of the dangerous condition that caused his injury. That is, whether or not he behaved negligently in the abstract, the record was insufficient to support a jury finding that he was negligent or otherwise at fault in regard to that condition.

In response to plaintiff's first assignment of error, defendant argues that plaintiff's formulation of the duties associated with premises liability transforms a possessor of land into an insurer of business invitees.[9] Defendant asserts that, regardless of the duties that the parties' special relationship may define, an invitee's reasonable care for his or her own safety is always relevant to determining whether the invitee shares responsibility for injuries suffered on another's premises. In defendant's view, the *Son* case is inapposite because, defendant reasons, the decedent in *Son* suffered two distinct injuries, one of which resulted solely

---

[9] Defendant first spends considerable time disputing whether the baggage carousel trim presented an unreasonably dangerous condition. However, plaintiff argued to the jury that there was a dangerous condition in the form of a sharp edge, the jury found defendant partly at fault in reliance on that theory, and defendant has not cross-appealed or cross-assigned error to any ruling in regard to that finding. Thus, the question whether the baggage-carousel trim was an unreasonably dangerous condition is not before us on appeal. *See generally, Ault*, 281 Or App at 851-52 (distinguishing between an allegation of an unreasonable risk of harm and an unreasonably dangerous condition).

from the defendants' negligent care, whereas, here, plaintiff suffered a single injury due to the combined fault of the parties. As to plaintiff's second assignment of error, defendant does not dispute that plaintiff did not know and could not have known of the condition at the base of the carousel, but contends that it was not required to prove that fact in light of plaintiff's established negligence in tripping over his suitcase.

## III.   STANDARD OF REVIEW

As we have noted, plaintiff's appeal implicates multiple standards of review. However, as to at least plaintiff's first assignment of error, his argument on appeal effectively reduces to an assertion that the trial court erred in allowing the jury to consider the affirmative defense of comparative fault as articulated in the trial court's instructions to the jury. In other words, if the court did not commit reversible error in instructing the jury as it did, then plaintiff's first assignment of error necessarily fails.[10] Thus, we turn our attention to that question. First, however, we set out the various standards of review applicable to assertions of instructional error.

"As a general rule, parties in a civil action are entitled to jury instructions on their theory of the case if their requested instructions correctly state the law, are based on the current pleadings in the case, and are supported by evidence." *Vandeveere-Pratt*, 242 Or App at 557-58 (internal quotation marks omitted). In order to be a correct statement of law, the instruction must be "complete and accurate in all respects." *Sloan v. Providence Health System-Oregon*, 282 Or App 301, 312, 386 P3d 203 (2016), *aff'd*, 364 Or 635, 437 P3d 1097 (2019). Because plaintiff contends that the instruction that the trial court gave regarding an invitee's duty was erroneous, "we review the given instruction to determine whether it probably created an erroneous impression of the law in the minds of the jurors that affected the outcome of the case." *Moorehead v. TriMet*, 273 Or App 54, 64, 359 P3d 314 (2015), *rev den*, 358 Or 550 (2016). When making

---

[10] As we conclude below, because the premise of plaintiff's second assignment of error is ultimately indistinguishable from that underlying his first, we need not separately consider the legal merits of plaintiff's second assignment.

that assessment, we do not review the instruction in iso-
lation; rather, we review the instructions in their entirety
to determine whether, as a whole, they correctly stated the
law. *State v. Hogevoll*, 348 Or 104, 108, 228 P3d 569 (2010).
Finally, instructional error does not, itself, warrant a rever-
sal. Instead, we will only reverse if the error "substantially
affected a party's rights." *Vandeveere-Pratt*, 242 Or App at
558 (internal quotation marks omitted). As relevant to this
appeal, "'[w]hen a trial court incorrectly instructs the jury
on an element of a claim or defense and when that incor-
rect instruction permits the jury to reach a legally errone-
ous result, a party has established that the instructional
error substantially affected its rights.'" *Id.* (quoting *Wallach
v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008)).

## IV.   ANALYSIS

### A.   *Premises Liability, Generally*

Generally speaking, the duties owed by a posses-
sor of land and a business invitee are discrete concepts. A
possessor of land is required to discover conditions of the
premises that create an unreasonable risk of harm and
either eliminate those conditions or warn foreseeable invi-
tees to enable them to avoid harm. *Maas v. Willer*, 203 Or
App 124, 129, 125 P3d 87 (2005), *rev den*, 340 Or 411 (2006).
Notwithstanding that duty to its invitees, a possessor of
land does not take on the role of "an insurer against acci-
dents upon the premises even as to persons whom they have
invited to enter." *Hagler v. Coastal Farm Holdings, Inc.*, 354
Or 132, 141, 309 P3d 1073 (2013) (internal quotation marks
omitted). Consistent with that principle, a business invitee
must exercise reasonable care to avoid harm from known
conditions or those that should be known to the invitee.
*Maas*, 203 Or App at 129.

In determining whether and to what extent a pos-
sessor of land is liable for injuries caused by a condition on
the land, the jury must compare each party's relative fault
for the invitee's harm. ORS 31.600 (providing that fault
attributable to a plaintiff is not a bar to recovery if it does
not exceed the combined fault of all other contributors, but
requiring damages to be "diminished in the proportion to the
percentage of fault attributable to the" plaintiff). However,

in assessing fault in the first instance, the jury must determine each party's fault, if any, without reference to the other party. *Woolston v. Wells*, 297 Or 548, 556, 687 P2d 144 (1984) ("The comparison of the parties' fault will only be meaningful if each party's fault is determined without reference to the other party ***."). As the Supreme Court explained in *Woolston*,

> "if the jury were instructed that [a] plaintiff is at fault for his own injury if he should expect that a reasonable land occupier would not have discovered the danger or would fail to protect entrants against it, the impropriety is apparent. We hold that it is no less improper to define [a] defendant's liability in these same terms."

*Id.*; *see also Vandeveere-Pratt*, 242 Or App at 562 (explaining that, because the doctrine of assumption of risk has been abolished, "a plaintiff's actions are no longer relevant to the defendant's duty of care" in the premises-liability context).

In discussing how the 1971 abolition of contributory negligence as a complete bar to recovery affected the duties between a possessor of land and a business invitee, the Supreme Court stated:

> "Where the issues of fact are framed by allegations of a defendant's negligence, defendant's denial thereof and defendant's affirmative defense of negligence on the part of the plaintiff, the instructions should be framed so as to present the issues in terms of the negligence of each party rather than in terms of liability. Each party is held to the same standard of care with respect to common law negligence. Negligence is conduct falling below the *standard established for the protection of others, or oneself, against unreasonable risk of harm*. The standard of care is measured by what a reasonable person of ordinary prudence would, or would not, do in the same or similar circumstances.

> "In general, it is the duty of the possessor of land to make the premises reasonably safe for the invitee's visit. The possessor must exercise the standard of care above stated to discover conditions of the premises that create an unreasonable risk of harm to the invitee. The possessor must exercise that standard of care either to eliminate the condition creating that risk or to warn any foreseeable invitee of the risk so as to enable the invitee to avoid the harm.

"The invitee is required to *exercise that same standard of care* in avoiding harm from a condition of the premises of which he knows, or, in the exercise of that standard of care, of which he should know."

*Woolston*, 297 Or at 557-58 (internal citation omitted; emphasis added).

Since *Woolston*, Oregon courts have adhered to that understanding of an invitee's duty of care. *See Garrison v. Deschutes County*, 334 Or 264, 278, 48 P3d 807 (2002); *Maas*, 203 Or App at 129. However, no decision has expressly addressed whether, for purposes of a comparative-fault analysis, an invitee can *always* be held accountable for failing to exercise "the standard established for the protection of others, or oneself, against unreasonable risk of harm," or, instead, only when the invitee fails to exercise that degree of care with respect to avoiding harm from conditions on the premises of which the invitee is or should be aware.

B.  *Son v. Ashland Community Healthcare Services*

As mentioned above, plaintiff analogizes his case to our decision in *Son*. Although we agree that *Son* provides some helpful guidance, we view that case somewhat differently than plaintiff does. Because it is central to plaintiff's argument on appeal, we explore that decision in some detail.

*Son* was a wrongful death case. 239 Or App at 498. In that case, after returning home from a party at which she had consumed alcohol and cocaine, the 16-year-old decedent, Sara, ingested an unknown quantity of prescription pills, including some leftover medications that her father, Burns, had stored in a box in the garage. *Id.* at 498-99. We described the ensuing events as follows:

"The next morning Sara was incoherent, uncoordinated, and vomiting. Burns took her to the emergency room at Ashland Community Hospital at approximately 11:00 a.m. At the time of her arrival, there remained confusion as to both the identification and quantity of the substances that Sara had taken. The hospital records indicate that Sara informed a nurse that she had consumed some alcohol and cocaine at the party. In addition, Burns's fiancée and Sara's friend gathered loose pills and empty pill bottles from the house and took them to the hospital. One of the empty pill

bottles was labeled as Propacet, which is a medication containing acetaminophen and propoxyphene.

"Defendant Rostykus was the emergency room physician at the time of Sara's admission. He initially administered Narcan to combat any narcotics in her system and diagnosed Sara with acetaminophen toxicity related to a poly-drug overdose. He suggested that she be admitted to the hospital for n-acetylcysteine treatment for acetaminophen toxicity and continued monitoring for a narcotic overdose. He provided her care until approximately 2:00 p.m. when Sara was transferred to the Intensive Care Unit (ICU) and responsibility for her care shifted to defendant Delgado. Delgado monitored Sara, but her condition quickly deteriorated around 5:00 p.m., and she died shortly thereafter. The Oregon State Medical Examiner and the Jackson County Medical Examiner listed the official cause of death as "sudden cardiac arrhythmia due to propoxyphene overdose."

*Id.* Following Sara's death, her mother filed a wrongful death action alleging, in part, that Sara's doctors had provided negligent treatment resulting in her death. *Id.* at 499.

In response, the defendants raised several comparative-fault affirmative defenses, including allegations that Sara had caused or contributed to her own death by consuming the various substances that she had and by failing to accurately tell her family, the nurses, or the defendant doctors what substances she had consumed and when and in what amount she had consumed them; defendants further alleged that Burns was comparatively at fault for failing to take "adequate preventative measures" in light of a previous suicide attempt by Sara that Burns knew about. *Id.* at 499-500. The trial court subsequently granted the plaintiff's motion to strike the defense related to Sara's consumption of substances, but it allowed the "failure to tell" defense to go forward; it also denied the plaintiff's motion to strike, as legally defective, the comparative-fault allegation as to Burns. *Id.* at 500. At the conclusion of trial, the jury returned a verdict for the plaintiff, but, based upon the jury's findings, the court reduced the damages award by 25 percent attributable to Sara's fault in failing to tell and 15 percent attributable to Burns's fault related to Sara's earlier suicide attempt. *Id.* at 501.

The plaintiff appealed the trial court's rulings allowing the jury to consider the defendants' affirmative defenses regarding Sara's "failure to tell" and Burns's alleged negligence; the defendants cross-appealed the court's ruling striking their affirmative defense regarding Sara's consumption of substances. *Id*. at 502. As to Sara's alleged failure to tell, we rejected the plaintiff's argument that, because nothing indicated that the defendants would have done anything differently had they known the details of Sara's Propacet ingestion, the evidence was insufficient to establish that her failure to tell had caused or contributed to her death. *Id*. at 502-04. As to that defense, we concluded that there was evidence from which the jury could find that Sara had failed to inform the defendants of her Propacet ingestion and that, had she done so, the defendants could have tailored her treatment appropriately and saved her life. *Id*. at 505. Accordingly, the trial court had not erred in allowing that defense to go to the jury. *Id*.

As to the affirmative defense based on Sara's pre-admission conduct, we broadly stated that "conduct by a patient that created the condition that required medical care in a medical malpractice action [cannot] constitute an affirmative defense." *Id*. at 505. In the course of reaching that conclusion, we observed that medical malpractice actions fall under a special category of negligence claims involving a "special relationship between the plaintiff and the defendant." *Id*. at 506; *see also Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 17, 734 P2d 1326 (1987) (discussing Oregon's adherence to the common-law concept of duty in special relationship cases). In such cases, a professional providing care to another has a duty to "meet the standard of care used in the reasonable practice of the profession in the community." *Son*, 239 Or App at 506 (internal quotation marks omitted). And, we emphasized, "the focus in a medical malpractice case is on the injury caused by the negligent treatment, not the original injury that created the need for the treatment." *Id*. at 508-09.

Notwithstanding that focus on a defendant's duty in "special relationship" cases, we did not reject out of hand the possibility that a plaintiff could be comparatively at fault in

such cases. Rather, we began by describing the general rule as follows:

> "[T]he *Fazzolari* standard, as applied in comparative fault cases, has been stated as whether the facts of the case indicate that the plaintiff 'took some action or failed to take some action which a reasonable person could have foreseen would increase the risk of harm to the plaintiff, and that the plaintiff did indeed suffer harm of the type which could have been foreseen * * *.'"

*Id*. at 507 (quoting *Dahl v. BMW*, 304 Or 558, 563, 748 P2d 77 (1987)). Then, after acknowledging that we had not previously considered whether a comparative-fault affirmative defense was available in the medical malpractice context, we recognized that there was no reason that it should not be, for the simple reason that medical malpractice cases were, ultimately, simply another "form of negligence." *Son*, 239 Or App at 509. We continued: "[A]nd, in the negligence context, findings of comparative fault can be based on the plaintiff's failure to take reasonable measures which might have prevented *or reduced* the injury *caused* by the defendant's negligence." *Id*. (first emphasis added; second emphasis in original; internal quotation marks omitted). However, to establish such a defense in a medical malpractice suit, a defendant would have to show "that the plaintiff's negligent conduct relate[d] and contribute[d] to the negligent treatment, because it is the negligent treatment that *causes* the injury that is at issue." *Id*. (emphasis added); *see also id*. at 510 ("[A]s a matter of law, conduct that merely creates the need for medical treatment *cannot cause* the type of harm at issue in medical malpractice cases—the injury resulting from the malpractice." (Emphasis added.)).[11] Applying that standard to the defendants' allegations about Sara's preadmission conduct, we held that the trial court had properly stricken that affirmative defense. *Id*. at 512.[12]

---

[11] Citing a treatise and case law from another jurisdiction, we stated that the "patient's negligence must have been an element in the transaction on which the malpractice is based." *Son*, 239 Or App at 509-10. Though we did not use the term, we understand those sources to have required a showing of "proximate cause," rather than mere but-for cause, between the plaintiff's negligence and the harm.

[12] For the same reasons that we held that the trial court had not erred in striking the affirmative defense regarding Sara's preadmission conduct, we held

C.   *Application*

We glean from our decision in *Son* and related case law several relevant principles. First, the fact that the duties of the respective parties are defined by their special relationship does not, for that reason alone, preclude a defendant from relying on ordinary principles of comparative fault as a defense. *See id.* at 509 (recognizing professional malpractice as "a form of negligence" and therefore a context in which a comparative-fault defense may be raised). And, although plaintiff argues that it was defendant's duty to make its premises safe even in light of the foreseeable negligence of its invitees—and contends that his own duty was limited to conditions of which he was aware or should have been aware—he correctly refrains from contending that his status as an invitee wholly excused him of his own duty of care. *See Woolston*, 297 Or at 558 ("The invitee is required to exercise that same standard of care in avoiding harm from a condition of the premises of which he knows, or, in the exercise of that standard of care, of which he should know."); *cf. Bowlds v. Taggesell Pontiac Co.*, 245 Or 86, 95, 419 P2d 414 (1966) (stating, before contributory negligence was abolished as a complete defense, that "[t]he law which requires a plaintiff to exercise the measure of care for his own safety that would be exercised by a reasonably prudent person for his own safety in the same or similar circumstances does not change merely because the plaintiff is an invitee").

Second, although the question of whether a defendant has breached the duty imposed by a special relationship must, as plaintiff emphasizes, be evaluated "without reference to the other party," *Woolston*, 297 Or at 556, a defendant's special duty towards a particular plaintiff does not require the jury to disregard the plaintiff's negligence, even where the defendant knows or has reason to know that persons in the plaintiff's position sometimes behave negligently. The plaintiff in *Son* argued that there was no evidence to support an argument that the decedent's negligence in failing to tell her providers what she had consumed had

---

that the trial court *had* erred in permitting the jury to consider the defendant's affirmative defense related to Burns's conduct, which, like Sara's substance use, had not been shown to be related to her negligent medical care. *Son*, 239 Or App at 512-16.

caused or contributed to her death; that, according to the plaintiff, was because the evidence established that "overdose patients are not reliable reporters of what and how much they have consumed." 239 Or App at 503. In essence, the plaintiff's contention was that, because that decedent's treatment providers should have anticipated that she would fail to exercise reasonable care for her own safety in that manner, the decedent's foreseeable behavior could not be attributed to the plaintiff in a comparative-fault analysis. Having at least implicitly rejected that argument in *Son* by upholding the allowance of the defendants' "failure to tell" defense, we expressly reject plaintiff's analogous argument here that defendant's affirmative defense was foreclosed because defendant knew or should have known that plaintiff would fail to exercise reasonable care for his own safety while claiming his bags. *Cf. Gardner v. OHSU*, 299 Or App 280, 286-87 & n 3, 450 P3d 558 (2019), *rev den*, 366 Or 292 (2020) (distinguishing, in a wrongful death action against mental-health providers following decedent's suicide, certain custodial circumstances in which a care provider has assumed an affirmative duty of self-care for a patient or inmate).

Third, although an owner or possessor of premises may raise a comparative-fault defense even when it has reason to believe that some of its invitees will behave negligently in some way, the invitee's fault must "relate and contribute" to the defendant's actionable conduct. *Son*, 239 Or App at 509 ("[T]he plaintiff's negligent conduct must relate and contribute to the negligent treatment, because it is the negligent treatment that causes the injury that is at issue."). Thus, in terms of plaintiff's claim that a sharp metal edge on the housing of defendant's baggage carousel created an unreasonably dangerous condition, the relevant question here is whether the trial court properly limited the jury's consideration to any fault on plaintiff's part that may have related and contributed to the danger presented by the trim, because it was allowing that alleged condition to exist that formed the basis of defendant's liability.

So stated, those principles expose the flaw in plaintiff's principal argument on appeal. As noted above, at the root of each of plaintiff's assignments of error is his

contention that, as a matter of law, the jury could consider defendant's affirmative defense of comparative fault only if there was evidence to show that he knew or should have known of the alleged dangerous condition. That is, each of plaintiff's various challenges to the evidence that the jury heard, to how it was instructed, to the denial of his motion for a directed verdict, and to the trial court's other rulings is premised on plaintiff's erroneous understanding that defendant was required to establish that plaintiff knew or should have known of the condition of defendant's baggage carousel before the jury could consider defendant's affirmative defense. We do not read our case law to support such a requirement. As a result, plaintiff's principal argument, based, as it is, upon there being such a requirement, cannot succeed.[13]

We turn finally to the one argument plaintiff raises that does not depend on the success of his principal argument. Plaintiff objected to the second sentence of the court's "Comparative Negligence (Invitee)" jury instruction. That instruction, to which plaintiff objected, states the lookout instruction as follows: "A person has a duty to keep and maintain a reasonable lookout and control over bodily movements, for their own safety." Plaintiff contends that that instruction revives the abolished doctrine of implied assumption of the risk and is impermissible under our premises-liability decision in *Vandeveere-Pratt*. In that case, the plaintiff fell and injured herself when, despite the placement of warning markers, she walked and slipped on a recently mopped floor. 242 Or App at 556. After the jury returned a defense verdict, the plaintiff appealed and assigned error to the following instruction:

"It is the continuing duty of a person to keep and maintain a reasonable lookout for their *** own safety.

---

[13] We recognize that *Son* did not define "relate and contribute" in a way that readily translates to the premises-liability context. *See Gardner*, 299 Or App at 290-91 (stating that *Son* used that term in the medical-malpractice context to encompass negligent "acts or omissions that undermined the treatment itself," and listing examples recognized in *Son*, including failing to cooperate with instructions or treatment and giving inaccurate patient history related to the allegedly deficient care or treatment). Because plaintiff's argument on appeal does not implicate the meaning of "relate and contribute," we express no opinion whether the requisite relationship or contribution was present in his case.

> A reasonable lookout means such as would be maintained by a reasonably prudent person under the same or similar circumstances.
>
> "In determining this question, you should take into consideration the extent or degree of danger reasonably to be expected. A person does not comply with the duty to keep a reasonable lookout by simply looking and not seeing that which is plainly visible and would have been seen by a reasonably prudent person under the same or similar circumstances."

*Id.* at 561. In *Vandeveere-Pratt*, we declined the plaintiff's invitation to wholly disavow the lookout instruction; we rejected its use there, however, because, under the circumstances in which it had been given, it would have suggested to the jury "that the plaintiff's failure to maintain a proper lookout excuse[d] the defendant from any liability because the plaintiff assumed the risk of injury." *Id.* at 564-65. We identified "at least two reasons [that] the jury could have understood the lookout instruction as excusing defendant's breach of its duty rather than as explaining defendant's allegations that plaintiff was herself negligent." *Id.* One, because the trial court had given the lookout instruction well after instructing the jury on comparative fault and the lookout instruction emphasized the plaintiff's duty, the "jury could have believed that the instruction as a whole related to plaintiff's *right to recovery* rather than to an examination of plaintiff's comparative fault." *Id.* at 565 (emphasis added). Two, the instruction's second paragraph "suggested that, because plaintiff did not see the warning markers, plaintiff was fully at fault for her injury and could not prevail." *Id.* As a result, the trial court had erroneously given the lookout instruction in that case. *Id.*

In plaintiff's case, the trial court's lookout instruction did not suffer the same infirmities as the instruction in *Vandeveere-Pratt*. First, it was given immediately after the general comparative-fault instruction and, indeed, was captioned as relating to *comparative* fault, not solely plaintiff's fault. Second, the text of the instruction itself contemplated a comparison of the parties' respective degrees of fault, in that it referred to the jury's task of "determining and *comparing* negligence" and the extent to "which harm to the

plaintiff from [the] danger could be avoided *by either party*." (Emphases added.) Accordingly, the trial court did not err in giving the lookout instruction for any reason identified in *Vandeveere-Pratt*.

## V.   CONCLUSION

Business invitees must always exercise reasonable care for their own safety when on premises of others. Notwithstanding that duty, an owner or occupier of premises has a separate duty to maintain reasonably safe premises for its invitees, and neither an invitee's duty of care nor a failure to exercise it absolves the owner or occupier of its own duty. However, an invitee's failure to exercise reasonable care for his or her own safety *may* be the basis of a comparative-fault defense if the invitee's negligence relates and contributes to the harm or risk of harm created by the defendant's negligence. Under those circumstances, whether the plaintiff knew or could have known that an alleged dangerous condition was on the premises is not determinative. Plaintiff's contention otherwise, which is central to each of his assignments of error, therefore fails. Accordingly, we affirm.

Affirmed.